# SUPREME COURT OF TEXAS.

## TYLER SESSION, 1875.

---

### EMMA DONLEY, ADM'X, v. E. W. BUSH.

1. EVIDENCE OF PARTIES TO SUIT—PRACTICE.—Where, in actions by or against executors, &c., the testimony of a party to the suit as to statements made by the deceased is admitted over objections made, the ruling of the court will be considered as made upon the objection taken, unless it affirmatively appear that the testimony was admitted in the exercise of the discretion allowed the court under the statute.
2. PAROL TESTIMONY CONTRADICTING WRITTEN.—In the absence of fraud or mistake, it is inadmissible to admit parol declarations varying or contradicting a written contract; such testimony is not admissible to explain subsequent acts of the party to whom such parol statements were made touching the written contract.
3. GUARANTY.—The guaranty of an overdue obligation does not assure the payment of such debt at any particular time, and the circumstances of the guaranty may be alleged and proven to explain when payment was to be made.
4. SAME—CLAIM AGAINST AN ESTATE.—Such guaranty would make the guarantor liable only in the event the claim could not be collected from the estate by the use of the legal remedies appropriate for the enforcement of such claims.

APPEAL from Cherokee. Tried below before the Hon. R. S. Walker.

*Priest & Priest* and *Bonner*, and *Whitaker & Robertson*, for appellant.

*M. A. Long*, for appellee.

I. In guaranty upon promissory notes, the obligation to prosecute the principal obligors within a reasonable time

(1)

and with due diligence is a condition precedent to the liability of the guarantor. (Miller *v.* Berkley, 27 Pennsylvania S. R., 317; Gallagher *v.* White, 40 N. Y., 92; Dyer *v.* Gibson, 16 Wis., 589; Riggs *v.* Waldo, 2 Cal., 485; same through the Cal. Reports to 39; Grigor *v.* Clark, 13 Cal., 580.) These two last discuss the reasons for the rule, and 2 Cal., 485, No. 1, cites State authorities: Rudy *v.* Wolf, 16 Serg. & Rawls., 79; Isefts *v.* Hoge, 2 Watts., 128; Nebitt *v.* Bradford, 6 Ala., 746; Barksdale *v.* Tennison, 2 How. & Mon., note 1, p. 113.

2. American Leading Cases, H. & W., notes 98, 99, 100, *et seq.*

II. The holder of a note indorsed after due, to fix the liability of an indorser, must use diligence in collecting from the obligors. (Winston *v.* Kelly, 33 Tex., 354; Sheppard *v.* Phears, 35 Tex., 769, 770; 8 Sergt. & Rawls., 350.)

The former statutes, or acts from our statutes, suspending the collection of debts during the war have no application to this case. (Smith *v.* Hobbs, 30 Tex., 30; Tutor *v.* Milliken, 30 Tex., 670.)

III. If a creditor does any act injurious to the surety or inconsistent with his rights, or if he omits to do any act when required by the surety which his duty enjoins upon him, and the omission proves injurious to the surety, the latter will be discharged, and he may set up such conduct as a defense to any suit against him, if not at law, at least in equity. (1 Story Eq. Jur., 325.)

GOULD, ASSOCIATE JUSTICE.—On January 24, 1860, W. L. Gammage and J. H. Reed executed two promissory notes to appellee, E. W. Bush, for $416 each, and payable, respectively, at five and eleven months after date. On each of these notes was the following indorsement:

" We waive time, notice, and protest, and guarantee the payment of the within. REED & JONES. *Oct.* 24, 1860."

On July 18, 1863, Bush made an affidavit authenticating

these notes, less some credits indorsed, as just claims against the estate of Abner L. Reed, deceased, the affidavit stating that Abner L. Reed and James M. Jones were the parties who guaranteed the notes, under the name of Reed & Jones. On this affidavit was the following indorsement, on which this suit is founded:

"For value received, I assign the within-described claims and annexed notes to S. P. Donley, and guarantee the payment of the same. (Signed) E. W. BUSH."

The petition was filed in July, 1871, making exhibits of the instruments described above; also other exhibits, showing that in December, 1865, Donley himself made affidavit to the notes or claims against the estates of J. H. Reed, Abner L. Reed, and James M. Jones; that on the same day the claim was accepted by L. H. Reed, as administrator of the estates of J. H. and A. L. Reed, and executor of the will of James M. Jones, and that it was in 1866 approved by the proper authorities as against these estates.

The original petition alleged the death of all the makers and original guarantors of the notes; that Gammage died leaving no estate; that the claim had been established as against the estates of the others; that these notes were due and still unpaid; asking judgment against Bush on his guaranty. By an amended petition the continued absence from the State of both Gammage and J. H. Reed from and at the time of the transfer of Bush up to their deaths (which occurred in the civil war) is alleged; also that the estate of J. H. Reed "is insolvent, as plaintiff is informed, and will not pay more than ten cents on the dollar." Exceptions to the petition, as amended, were overruled. The answer of the defendant sets up that L. H. Reed, as executor of J. M. Jones, deceased, was, under power conferred on him by the will, conducting the estate free from the control of the courts, and was subject to be sued as Jones was in his lifetime, and that his and the other estates were solvent. The consideration of the trans-

fer and contract was alleged to be $1,000 in Confederate money. It was further averred that at the time of the execution of the transfer and guaranty Donley promised that he would look alone to the other parties for payment, taking his chances for collecting them, and that the defendant signed the transfer with that understanding; also that in February, 1864, defendant requested Donley to push the collection of the claims, and that Donley replied that he in no wise held defendant liable, and that defendant need give himself no concern about the matter; that, in fact, Donley, up to his death, in 1871, never made any claim of defendant; claiming that by the neglect to proceed against the other obligors defendant was discharged.

The pleadings in the case are voluminous, and were repeatedly amended. It is not necessary to state them more minutely. By the rulings of the court, the defense of Confederate money, or illegality, was overruled, and the defense was narrowed down to the alleged agreement of "Donley not to hold defendant liable, and other facts showing Donley's action in accordance therewith, dispensing with the use by defendant of any caution to secure himself, or the use of any diligence to enforce payment of said notes by the other obligors."

There was a trial and verdict for defendant.

It appears by bill of exceptions that "the defendant, voluntarily, and without being called by the plaintiff, and without being required by the court, took the witness stand and was examined, without objection, concerning certain facts disconnected with any transaction between himself and deceased. Whereupon the defendant was interrogated concerning the facts and circumstances under which the transfer of the note to the deceased was made and the guaranty executed to S. P. Donley, and what was said and done at the time the same was made; to which plaintiff objected because defendant was incompetent, under the statute, to give evidence of and concerning any transaction

or declaration of (or) with said S. P. Donley, now deceased, in a suit against defendant by Emma Donley, executrix of S. P. Donley, not being called by her as a witness, or otherwise required by the court to testify than appears above. This objection the court overruled, and permitted the witness to be examined in his own behalf touching any matter concerning which a disinterested witness or any one not a party to the suit might be examined." It further appears by bill of exceptions that " the defendant's counsel offered to prove by the defendant himself that S. P. Donley told defendant, when he made said guaranty in writing, that he, Donley, would not hold him, defendant, responsible, on his guaranty, for the payment of the notes guaranteed; to which plaintiff objected because such proof was inadmissible; that a parol contemporaneous promise or understanding was inadmissible to alter, change or modify, (or) in any manner affect defendant's liability in writing. This objection the court overruled, and admitted the same as a circumstance to go to the jury tending to establish the defense set up by defendant that Donley's representations had induced him to rely upon them, and thereby to sustain a loss," &c.

We think that the court erred in each of these particulars.

The act further regulating proceedings in the several courts, passed May 19, 1871, (Paschal's Dig., arts. 6826–6827,) is as follows :

" 1. In the courts of this State there shall be no exclusion of any witness on account of color, nor in civil actions, because he is a party to or interested in the 'issue tried.'

" 2. In actions by or against executors, administrators, or guardians, in which judgment may be rendered for or against them, neither party shall be allowed to testify against the other as to any transaction with or statement by the testator, unless called to testify thereto by the opposite party or required to testify thereto by the court."

The disposition of this case does not make it necessary for us to inquire to what extent the discretion given the court to require a party to testify is subject to revision; nor is it necessary to discuss the rules which should regulate the court in the exercise of its authority. It may be that no such question will arise on another trial, and it has not been deemed advisable to express any opinion on the subject.

The bill of exceptions shows that when the defendant proposed to testify as to transactions with or declarations by S. P. Donley, deceased, the plaintiff objected; and in our opinion it does not show that the court overruled the objection, because the party was required to testify by the court.

The law devolves on the court the responsibility in a proper case, of departing from a rule adopted for the protection of estates. In Indiana, where the law appears to be almost identical with our own statute, the courts seem inclined to construe it as conveying the idea of compelling an unwilling witness to give evidence. (Williams *v.* Allen, 40 Ind., 298, 299.) Without adopting this construction, we think it should not be left at all uncertain whether the court intended to overrule the objection to the evidence or to exercise the discretionary power of nevertheless admitting it.

It should affirmatively and definitely appear that the court acted under the statute. If the action of the court in refusing to require a witness to testify were complained of, it could be revised by making it appear that the "evidence was sought under that provision of the act." (Williams *v.* Allen, *supra.*) And so, if the action or ruling of the court is sought to be justified under the act, it ought to appear that it was placed by the court on that ground, and not on the invalidity of the legal objection. Cases can easily be imagined where it may be difficult to say whether or not the evidence was competent under the statute, without the

witness being called or required to testify. If the record recites simply that the evidence was objected to and that the objection was overruled and the evidence admitted, the fair inference is that the court acted simply on the question of law. Such seems to have been the construction and practice under the Indiana statute. (Bishop *v.* Nelah, 35 Ind., 523; Peacock *v.* Albin, 39 Ind., 26; Fitzgerald *v.* Cox, 39 Ind., 84.)

We are also of the opinion that the court erred in admitting evidence of a parol contemporaneous agreement variant from the written contract. It is true that the jury were told that the evidence could not change the contract, and it appears to have been admitted as tending to show that Bush was induced to rely on Donley's subsequent assurance claimed to have been made in pursuance of such parol agreement, and thereby prevented from giving duly written notice to bring suit against the principals. There was no allegation of fraud in procuring the contract, or of mistake in its terms. We are unable to see how any defense could be predicated on promises, on which, if made, defendant had no legal right to rely.

In reversing the case for these errors, it is proper that we should pass upon the main question discussed by counsel, and which will necessarily arise on another trial, viz: the construction of the written transfer and guaranty on which the suit was founded.

There can be no question that such a transfer of a negotiable instrument, before maturity, made for an independent consideration, amounts to a contract that it shall be paid at maturity, and in the event it is not so paid, the guarantor is at once liable on his contract. (Edwards on Bills and Notes, 233; Allen *v.* Rightmere, 20 John., 365; Donley *v.* Camp, 22 Ala., 663.)

But if, as in this case, a party transfers and guarantees the payment of claims and notes long past due, including a claim against the estate of a deceased person, it is believed

that there are no technical rules which would affix to the contract the obligation of immediate payment. The words used leave it uncertain at what time the guarantor contracts that the claims and notes shall be paid; whether immediately or ultimately; and there is nothing in the nature of the contract forbidding an effort to arrive at the true intention of the parties on this point by looking at the subject-matter of the contract, and as far as possible recalling the circumstances under which it was made. (Am. Lead. Cas., vol. 2, p. 96; Story on Prom. Notes, sec. 469, *et seq.*; Smith *v.* Montgomery, 3 Tex., 204; Self *v.* King, 28 Tex., 554.)

It appears from the face of the papers that at the time of the transfer by Bush the notes had been due from two to three years. The transfer was not only of the notes, but of the claim against the original guarantors, including the claim against the estate of A. L. Reed, deceased. The evidence discloses that the makers of the notes were absent from the State, taking part in the civil war which then prevailed. It is a fact of which the court will take notice that the courts were at this time substantially closed for the collection of debts, and remained so long afterwards. The evidence shows that the consideration paid for the transfer was Confederate money, then greatly depreciated in value, and that fact indicates that the object of the purchaser may have been to invest that depreciated currency in notes and claims which would ultimately be good. These circumstances all tend to the conclusion that it was not the expectation of the parties that the claims should be paid immediately or at any early date; and that Bush did not intend to so bind himself. On the contrary they indicate with scarcely less certainty that the true meaning of the contract was to guarantee the ultimate payment of the claims. Such a guaranty is in effect that the claims are good and can be collected. (See Johnston *v.* Mills, 25 Tex., 717, and authorities there cited.)

Such a guaranty of a claim against the estate of a deceased person would make the guarantor liable only in the event the claim could not be collected from the estate by the use of those legal remedies appropriate for the enforcement of such claims.

It follows, from this view of the contract, that the defendant's exceptions to the amended petition should have been sustained. It was for the plaintiff to allege and show, not merely that the claim had been presented and allowed, but also that it could not be, by reasonable effort, and could not have been, by reasonable diligence, collected out of the estates of not only the original makers of the notes, but also of the original guarantors.

And in this view of the contract, if the plaintiff has failed to use reasonable diligence, and the defendant has suffered thereby, it constitutes, *pro tanto*, a good defense.

The judgment is reversed and the cause remanded.

REVERSED AND REMANDED.

[Justice REEVES did not sit in this case.]