### FOARD COUNTY V. SANDIFER.

#### No. 2259. Decided November 27, 1912.

**1.—Practice in Supreme Court.**

Writ of error in a case reversed and remanded having been obtained on the ground that the ruling practically settled the case, the Supreme Court, on approving such rulings, will render judgment though the facts have not been found by the Court of Civil Appeals, if the proof which supports such judgment is undisputed. (P. 423.)

**2.—County—Constitutional Law—Creation of Debt.**

A contract by a county incurring a pecuniary obligation does not constitute the creation of a debt, such as is forbidden by the Constitution (art. 11, sec. 7) unless provision is made for its payment at the time of its creation, where the obligation falls due within the current year and the funds within the control of the corporation or which it may lawfully raise by taxation for that year are sufficient to pay such debt after meeting all its current expenses for the year. (Pp. 423, 424.)

**3.—Contract—Construction—Legality.**

A contract capable of two constructions of which one would render it legal, the other illegal, should receive the former construction. The parties are presumed to know the law and to contract in accordance with it. (P. 424.)

**4.—Same—County—Sale of School Land—Expenses of Sale.**

A contract by a county in listing its school lands with an agent for sale at a net price to the county of $4 per acre, without provision for the agent's compensation for selling, the county being without power to pay such compensation out of the school fund either in the land or its proceeds, will not be held an illegal undertaking to allow the agent all the price realized in excess of that so named, but as fixing such price as a minimum, the school fund to have any excess realized, and the county to pay the agent a reasonable compensation for selling, not out of the proceeds, but out of the general county funds. (Pp. 424, 425.)

**5.—Same—Contract.**

The fact that land was to be sold on a credit, payable in not less than ten years' time, excludes the construction that the agent, for selling it, was to be compensated out of the proceeds. (P. 425.)

**6.—Same—Quantum Meruit.**

Where no compensation for the services of a land agent in selling land listed with him therefor was fixed by the contract, the law implied an undertaking to pay the reasonable value of his services. (P. 425.)

Error to the Court of Civil Appeals, Second District, in an appeal from Foard County.

Sandifer sued Foard County and appealed from a judgment for

defendant. This being reversed and the cause remanded, the county obtained writ of error on the ground that the rulings on appeal settled the case.

*G. W. Walthall, Stephens & Miller,* and *Gregory, Batts & Brooks,* for plaintiff in error.—The claim on which the defendant in error sues is (if otherwise valid) a "debt" within the meaning of Section 7 of Article XI of the State Constitution, and void because same was not an item of ordinary current expense to be paid out of the current revenues of the county, and no provision whatever was made by the county for any tax to pay same. McNeal v. City of Waco,, 89 Texas, 88; Ault v. Hill County, 102 Texas, 337; City of Houston v. Glover, 40 Texas Civ. App., 18; Mineralized Rubber Co. v. Cleburne, 22 Texas Civ. App., 622; Howard v. Smith, 91 Texas, 15; Fourth National Bank v. Dallas, 73 S. W., 844; Peck-Smead Co. v. Sherman, 26 Texas Civ. App., 210; Noel v. San Antonio, 11 Texas Civ. App., 580; Terrell v. Dessaint, 71 Texas, 770; Biddle v. Terrell, 82 Texas, 335.

The proper construction of the contract between the county and Sandifer, in so far as the compensation provided for is concerned, is that Sandifer was to have all that the county school land sold for over $4 per acre. There is nothing in the language of the writing which says or indicates that $4 per acre was to be the minimum price that the county was to receive. On the contrary, the explicit language of the contract is that the land is placed in the hands of Sandifer as exclusive agent to sell "at and for the sum of $4 an acre * * * said price being net to the county of Foard, State of Texas, and payable twenty years from date of sale." The proper construction of this language is that the county was to receive from the sale of the land $4 per acre net, no more and no less. Not only is this the proper construction of the language employed, but there is in the record, as above shown, the affirmative testimony of all parties to the contract that such was their intention and meaning.

*W. D. Berry, Robert Cole, F. P. McGhee,* and *McGregor & Gaines,* for defendant in error.—This claim is properly against the third class or current expense account of defendant county, and no sinking fund is necessary to provide for its payment. Rev. Stats., art. 794; Palo Pinto County v. Gano & Sons, 60 Texas, 249; Rev. Stats., art. 4171; Presidio County v. City Bank, 20 Texas Civ. App., 511.

The county having employed Sandifer to sell its school land and reaped the benefit of his services, he should be paid a reasonable compensation, and the fact that he and the commissioners were mistaken as to the fund he should be paid from makes no difference as to his rights and the county's liability to him therefor. Club Land & Cattle Co. v. Dallas County, 26 Texas Civ. App., 449; same case by Supreme Court, 95 Texas, 200; Hollingsworth v. Young Co., 40 Texas Civ. App., 590; Tomlinson v. Hopkins Co., 57 Texas, 572; Gallups v. Liberty Co., 122 S. W., 291; Harris Co. v. Campbell, 68 Texas, 26.

When court contracts to pay for services rendered in sale of school lands—but out of a fund that it cannot pay from and in such sums

as would be unreasonably high, as it has done in this case, it can and should correct both errors and pay out of proper fund a reasonable amount therefor.    Tomlinson v. Hopkins County, 57 Texas, 572; Club Land Cattle Co. v. Dallas Co., 95 Texas, 200; same case, 26 Texas Civ. App., 449.

It is a fundamental rule that where a contract is fairly susceptible of two constructions, one of which will render the contract void and the other valid, the court will adopt the one that will validate the contract.    Matagorda County v. Casey, 49 Texas Civ. App., 35. .This view is strengthened by the fact that the purchase money was payable in from 10 to 20 years.    We believe the weight of authority sustains the proposition that when a brokerage contract simply names a net price, the broker is bound to sell the thing to the best advantage of his principal, having regard to the net price as a minimum, and that the law implies a promise on the part of the principal to pay the agent the customary and reasonable compensation for such service.    Turnley v. Michael, 15 S. W., 912; Allen v. Clopton, 135 S. W., 242; Boysen v. Robertson (Ark.), 68 S. W., 243; Matagorda Co. v. Casey, 49 Texas Civ. App., 35; Metheny v. Godin, 130 Ga., 713; 1 Am. & Eng. Ency. Law (2nd ed.), 1072; Walker's Real Estate Agency, sections 481, 655.

MR. CHIEF JUSTICE BROWN delivered the opinion of the court.

This suit was instituted in the District Court to recover of said county reasonable compensation for selling the school lands of said county under this contract:

"This order entered into the 13th day of February, 1909, by and between the Commissioners' Court in and for Foard County, Texas, parties of the first part, and C. P. Sandifer, of Foard County, Texas, part of the second part, witnesseth:    That the parties of the first part have this day listed for exclusive sale with the party of the second part, for a term of six months from date herewith, the following described property, to-wit: 17,712 acres of land, the same being Foard County School, lying and being situated in Bailey County, Texas, at and for the sum of $4.00 per acre, with five per cent interest from date, payable annually or semi-annually, said price being net to the County of Foard, State of Texas, and payable twenty years from date of sale, with option to the purchaser to pay any part or all the principal at or on any interest-paying period after ten years from date of sale. It is also understood and agreed that the sale of the above described land is to be made subject to a lease now on said land, which expires on the 30th day of September, 1913. The party of the first part agrees to deed said land in subdivisions, provided the party of the second part thinks necessary to do so in disposing of the said land to the better advantage to the county."

The agreement was entered upon the minutes of the county court of said county and signed by the county judge and commissioners and by Sandifer.    There is no complaint as to the regularity of the making of the agreement.

Within a short time Sandifer sold the land to G. T. Oliver—

17,712 acres of free school land—for the sum of $119,556.00, with interest from April 14th, 1909. The sale was duly consummated and the land conveyed to Oliver. Sandifer claimed as his commission five per cent on the amount the land sold for. The county resisted the recovery on two grounds, to-wit: First, the contract created a debt upon the county and made no provision for its payment, which was in violation of Section 7 of Article XI, of the Constitution, which reads: "But no debt for any purpose shall ever be incurred in any manner by any city or county unless provision is made at the time of creating the same, for levying and collecting a sufficient tax to pay the interest thereon and provide at least two per cent as a sinking fund; and the condemnation of the right of way for the erection of such works shall be fully provided for." Second, that the contract provided for payment out of the proceeds of the school land, which was in violation of the law.

The District Court gave judgment for the county, from which Sandifer appealed to the Court of Civil Appeals of the Second Supreme Judicial District, which reversed the judgment of the District Court and remanded the cause for another trial. The county applied for a writ of error to this court upon the ground that the decision of the Court of Civil Appeals practically settles the case, and the writ was granted upon that ground.

Judge Ocie Speer, who wrote the opinion, correctly announced the law, but overlooked the requirements of Art. 1639, Revised Statutes, 1911, and announced no conclusions of fact, which is very important to this court in reviewing the judgment. We will not send this case back, because the facts are practically undisputed; if they were not, it would be necessary to return the record for a compliance with the said article.

We were inclined to hold that the terms of the order entered created a debt within the meaning of the section of the constitution above copied. But we find in the statement of facts this evidence, which is not contradicted: "In making our levies and assessments, we generally figure as to about what amount we think will be necessary to pay the expenses of the county, and we make the levy so as to meet the expenses as estimated by us. We have never made a levy at the highest limit which we are authorized to levy. If we were to make the levy at the limit, that would place enough money in the general fund of the county to pay all the general running expenses of the county, and also pay the amount of commissions claimed by Mr. Sandifer in this suit." The contract required the sale to be made in six months, by July 13th, 1909. It was consummated before that time. The claim could have been provided for during the current year by a levy of a tax for that purpose; the power of the county to levy taxes had not been exhausted. It was necessary that the levy should have been made, and the test is, did the county have sufficient power to pay the claim. There is no denial of that fact, which was proved, as was shown, by the evidence of Burk, the county judge of Foard County.

In City of Corpus Christi v. Woessner, 58 Texas, 467, Judge Stayton said:

"We are of the opinion that the issuance of warrants on current expenses of a city, which do not exceed the current revenue derived from taxation, permitted by law to be levied to meet current expenses, and such other revenue as a city may have from other sources than taxation, cannot be said to be the creation of a debt prohibited by law unless a special tax be levied to meet the interest and create a sinking fund.

"The evidence shows that the revenue of the city for the year 1879, if it had been applied to proper municipal purposes, would have been more than sufficient to meet the payment of the warrants sued upon, after paying all other current and proper expenses. And it further appears that, in addition to the money raised by taxation, permitted by law to meet current expenses, the city has an income of $4,000 per year, for many years to come, from her wharf interests; and that from these two sources, at the time of the trial of this cause, there was a surplus in the treasury."

We cite Terrell v. Dessaint, 71 Texas, 770; McNeal v. City of Waco, 89 Texas, 83; City of Cleburne v. Cleburne Water Co., 14 C. C. A., 229.

In McNeal v. City of Waco, 89 Texas, 88, by his irresistible logic, Judge Denman reaches this conclusion: "We conclude that the word 'debt,' as used in the constitutional provisions above quoted, means any pecuniary obligation imposed by contract, except such as were at the date of the contract within the lawful and reasonable contemplation of the parties, to be satisfied out of the current revenues for the year or out of some fund then within the immediate control of the corporation."

The commissions in this case were by law made payable out of the county fund; it became due in the current year, and there was ability in the county by taxation to raise the fund for its payment. The claim did not constitute a debt within the meaning of the constitution.

Plaintiff in error also asserts that the contract between the county and Sandifer bound the county to pay to Sandifer all of the proceeds of the sale in excess of four dollars per acre, which was forbidden by law, the county being required to pay the cost of sale. The writer was inclined to that view of the contract, but upon further consideration of the facts and the able argument of counsel for defendant in error, we conclude that the effect of the language, "at and for the sum of $4.00 per acre," etc., is to set the minimum price for which sale might be made at $4.00 per acre and does not mean that the school fund should receive no more than that amount per acre. The law forbids the county to pay the cost of selling out of the school fund either in land or the proceeds of it. We must presume that both parties knew the law and intended to obey it. Tomlinson v. Hopkins County, 57 Texas, 575. It is a well established rule of construction that language in a contract which is susceptible of two constructions, one of which would render the contract illegal and the other would make it lawful, that contract which would conform the contract to the law must be adopted. Clark on Contracts, p. 593; Evans v. Pike, 118 U. S., 240-41; Hobbs v. McLean, 117 U. S., 376. The rule of construction is stated by Clark thus: "Where a par-

ticular word, or the contract as a whole, is susceptible of two meanings, one of which will render the contract valid and the other of which will render it invalid, the former will be adopted so as to uphold the contract. Thus, where a document was expressed to be given 'in consideration of your being in advance' to a person, and it was argued that this showed a past consideration which would not support the promise, the court held that the words, 'being in advance,' might mean a prospective advance, and be equivalent to 'in consideration of your being in advance,' or 'on condition of your being in advance.' So, also, where a contract is susceptible of two constructions, one of which will render it unlawful as being in violation of law or contrary to public policy, that construction which will render it lawful will be adopted.''

The fact that the land was to be sold on credit for a time not less than ten years, and no provision made for any cash payment, excludes the construction that compensation was to be made from the proceeds of the sale. (See authorities last above cited.) The construction which makes the contract legal is most consistent with the facts and must be adopted. If the Commissioners' Court had in plain words agreed to pay Sandifer a part of the proceeds of the sale of school land, that body would have violated the law. We must presume that a violation was not intended. The decisions of this court, which were made before this contract was made, are so plain that they could not have been misunderstood, if known to the parties, and the law conclusively presumes that they were known. Tomlinson v. Hopkins, *supra.* We conclude that the contract between the parties limited the minimum price to four dollars per acre, and that the compensation to be paid was not fixed by the terms of the written contract.

The compensation for making the sale was fixed by law at a reasonable sum, considering all of the facts. Quite a number of witnesses testified that five per cent on the gross sale was a customary and reasonable consideration for services rendered by Sandifer to Foard County, and there does not appear to be a conflict on that issue. Plaintiff in error has requested this court to take jurisdiction because the judgment of the Court of Civil Appeals practically settles the case, which calls upon this court to enter final judgment. It is therefore ordered that the judgment of the Court of Civil Appeals reversing the judgment of the District Court is approved. And it is further ordered that the defendant, C. P. Sandifer, have and recover of and from Foard County the sum of $5,977.80, together with all costs of suit.

*Affirmed and judgment rendered.*