SLAUGHTER v. MORTON. (No. 947.)

(Court of Civil Appeals of Texas. Amarillo. April 12, 1916. Rehearing Denied May 10, 1916.)

1. ATTACHMENT ⬤➡124—VALIDITY—VARIANCE FROM PETITION.

Where the petition alleged that defendant sold and assigned a note to plaintiff, and guaranteed payment before maturity for valuable consideration, the plaintiff being entitled to rely on a simple action of debt, without setting up fraud, an attachment affidavit alleging that the plaintiff's property was secured by false pretenses did not present a variance; the statute not requiring the petition to allege fraud, but only that the affidavit do so.

[Ed. Note.—For other cases, see Attachment, Cent. Dig. §§ 338–343; Dec. Dig. ⬤➡124.]

2. GUARANTY ⬤➡77(2)—LIABILITY—ACTIONS—PARTIES.

Rev. St. arts. 587, 1842, 1843, 6336, and 6337, providing the manner of suing obligors other than the principals on notes, bills, etc., apply only to suits against obligors not primarily liable, so that it is not necessary before suing the absolute guarantor of a note to sue the principal, nor to make him a party.

[Ed. Note.—For other cases, see Guaranty, Cent. Dig. § 89; Dec. Dig. ⬤➡77(2).]

3. GUARANTY ⬤➡91—LIABILITY — RELEASE — EVIDENCE.

Evidence in suit against the guarantor of a note, *held* to sustain the finding that one who assumed to act for the principal in securing an extension of time was not authorized to do so, and that the principal was in fact a "straw man."

[Ed. Note.—For other cases, see Guaranty, Cent. Dig. § 104; Dec. Dig. ⬤➡91.]

Appeal from District Court, Dallam County; Hon. D. B. Hill, Judge.

Action by J. G. Morton against W. B. Slaughter. Judgment for plaintiff, and defendant appeals. Affirmed.

Towne Young, of Dallas, and J. Y. Powell, of Dalhart, for appellant. Tatum & Tatum, of Dalhart, for appellee.

HENDRICKS, J. This controversy involves the liability of W. B. Slaughter, as a guarantor of the payment of the following note:

"$10,200.00. No. 1. Dalhart, Texas, Dec. 16, A. D. 1911. Three years after date, I promise to pay to the First National Bank of Dalhart, Texas, or order, the sum of ten thousand two hundred $88/100$ dollars, with interest thereon from date until paid, at the rate of 10 per centum per annum, the interest payable semiannually as it accrues, both principal and inter-

est payable at Dalhart, Texas, for value received. This note is given in part payment for a certain lot or parcel of land situated in Hartley county, Texas, being section No. 251, block 44, certificate 49/7025, H. & T. C. Ry. Co., containing 640 acres of land, this day conveyed to J. D. Rawlings by the First National Bank and to secure payment of same, according to the tenor hereof, a vendor's lien is retained in said conveyance and is hereby acknowledged. All past-due interest on this note shall bear interest at the rate of 10 per centum per annum after the annual maturity thereof. And it is hereby specially agreed that if this is placed in the hands of an attorney for collection or if collected by suit, I agree to pay 10 per cent. additional on the principal and interest then due thereon as attorney's fees.

"[Signed]  J. D. Rawlings."

Same being indorsed on the back as follows:

"Without recourse. First National Bank of Dalhart, Texas, by ....., President.

"We guarantee payment. C. C. Slaughter. W. B. Slaughter.

"Int. to June 16, paid 1912. Int. to Dec. 16, paid 1912. Int. to June 15, paid 1913. Int. to Dec. 16, paid 1914."

Ancillary to the original suit instituted by Morton, the holder of the note, certain writs of attachment were issued and levied upon different parcels of real estate, based in part upon the following affidavit:

"The plaintiff in attachment * * * says that W. B. Slaughter, the defendant, is justly indebted to the said plaintiff in the sum of $11,-569 $^{94}/_{100}$, * * * and that the said debt is due for property obtained under false pretenses."

The suit against W. B. Slaughter upon the guaranty, it will be noted, with reference to the note, is upon allegations of the execution and delivery by J. D. Rawlings, the maker thereof, to the First National Bank of Dalhart, the transfer and assignment by said bank of said note to the defendant, W. B. Slaughter, and the further sale and transfer subsequent to the execution and before maturity of said note for a valuable consideration by the said Slaughter, to Morton, the plaintiff herein, and that as a part of the consideration moving to said plaintiff, the defendant, W. B. Slaughter, and C. C. Slaughter "bound themselves by indorsement on said note that they would and did guarantee the payment of the said note."

The appellant, W. B. Slaughter, contends that the writs of attachment, based upon the affidavit, that the debt is due for property obtained under false pretenses, must fall, because there exists a fatal variance between the allegations of the petition and the affidavit for attachment.

[1] The argument is that a petition upon a promissory note—in this case against the guarantor—upon merely simple allegations ex contractu, without any further allegations of fraud, the affidavit is inconsistent and contradictory to the cause of action as alleged; hence the variance.

The case of Focke et al. v. Hardeman, 67 Tex. 173, 2 S. W. 363, by Chief Justice Willie of the Supreme Court, is cited as strictly in point and controlling. In that case the suit brought on an account due to John Focke, Henry Wilkins, and Herman Lange, constituting the firm of Focke, Wilkins & Lange.

The attachment was issued upon an affidavit that the defendants were indebted to John Focke, "John" Wilkins, and Herman Lange, constituting a difference of name as to Wilkins, composing said partnership. In this state, of course, ordinarily speaking, a partnership is not an entity; its legal recognition is by virtue of the constituent members of the firm. A suit in behalf of one firm and an affidavit in garnishment that the defendants owe another firm is necessarily at variance. Justice Willie did say in that cause:

"A plaintiff cannot sue upon one cause of action and have the defendant cited upon another; much less can he obtain a writ of attachment in the suit upon a different demand. * * * If, therefore, the affidavit claims the attachment upon a demand different from that sued on, it is wholly unauthorized in the particular case."

Appellant extends this argument with the proposition that plaintiff, Morton, should have based his suit upon the ground, or at least exhibited a count in his petition, that the debt is due for property obtained by fraud.

We do not think Chief Justice Willie intended his language to apply any further than the particular case, or analogous cases where the petition, and the affidavit in attachment, exhibit a contradiction. The statute says that if the debt is due for property obtained under false pretenses, the attachment may be awarded. The petition in this case suggests that the property obtained by the defendant, Slaughter, by virtue of a debt evidenced by the guaranty, is the money Morton paid for the note. The statute does not require the action to be predicated upon false pretenses, and it might appear anomolous to compel the plaintiff to allege such fraud as a constituent of his cause of action, when he is clearly entitled to simple action of debt upon the guaranty, without setting out the fraud inducing the debt.

The case of Gray v. Steedman Bros., 63 Tex. 95, does not hold, as asserted, that "false representations must be alleged," as applicable to a controversy over an abatement of the writ. The remarks in the latter part of the opinion with reference to the question of plaintiff relying upon the fraudulent representations, as an inducement to the debt, are applicable entirely to an issue of reconvention in damages. The first assignment is overruled.

[2] The appellant's second and third assignments of error, being cognate, will be discussed together. Plaintiff alleged the maturity of the note as December 16, 1914, and omitted J. D. Rawlings, the maker of the note, from the suit on the following alleged justification:

"Plaintiff further shows unto the court that both the said J. D. Rawlings and the said C. C. Slaughter are insolvent and the said J. D. Rawlings was insolvent at the date when this suit could have been brought at the first term of said court, and the second term of this court, after the same became due, and has been insolvent and are thereby not made parties defendant in this suit."

The testimony shows that Morton and one of his attorneys interviewed Rawlings some time in March, 1915—probably the latter part thereof—and Rawlings at that time said he could not pay the note nor any interest upon the same, "as he had nothing to pay with." Appellant says that this testimony means money as to Rawlings' inability to pay, and not property.

Appellant demurred generally to the petition, and asserts that the same fails to show that the principal obligor upon the note was insolvent at the time of the maturity of same, and also contends as stated that the evidence of insolvency, actual or notorious, is not only insufficient to prove either condition, from the nature of the testimony, but is not addressed to the proper time; hence the guarantor, W. B. Slaughter, should be dismissed. Against all this, the appellee contends that the guaranty of W. B. Slaughter upon the back of the note is absolute, and that he is bound immediately, upon the failure of the principal debtor, to pay the note, without any further steps to be taken by any one, or without further conditions to be performed by any one. The American & English Encyclopedia of Law (2d Ed.) vol. 14, p. 1153, in discussing the necessity of a suit against the principal obligor, where the guaranty is absolute, says:

"As already shown, the guarantor's liability does not depend upon demand and notice of default where the guaranty is absolute. A fortiori suit against the principal debtor is not necessary in the case of an absolute guaranty to fix the liability of the guarantor."

Numerous authorities from different states are cited, the following of which we have read, some of which either directly sustain the text and others are strongly argumentative of the postition assumed: Penny v. Crane Bros. Mfg. Co., 80 Ill. 244; Stowell v. Raymond, 83 Ill. 120; Sample v. Martin, 46 Ind. 226; Crissey v. Interstate L. & T. Co., 59 Kan. 561, 53 Pac. 867; Hungerford v. O'Brien, 37 Minn. 306, 34 N. W. 161; Osborne v. Gullikson, 64 Minn. 218, 66 N. W. 965; Wren v. Pearce, 4 Smedes & M. (Miss.) 91; Flentham v. Steward, 45 Neb. 640, 63 N. W. 924; McMurray v. Noyes, 72 N. Y. 524, 28 Am. Rep. 180; Gage v. Bank, 79 Ill. 63.

The Court of Appeals of New York said, in the case of McMurray v. Noyes, supra, Rapallo, Justice:

"The fundamental distinction between a guaranty of payment and one of collection is, that in the first case the guarantor, * * * without taking any steps to collect * * * will pay, and the creditor may, upon default, proceed directly against the guarantor, without taking any steps to collect of the principal debtor, and the omission or neglect to proceed against him is not (except under special circumstances) any defense to the guarantor," etc.

Mr. Justice Breese, of the Supreme Court of Illinois, in the case of Gage v. Bank, 79 Ill. 63, supra, in discussing a guaranty upon the back of a note made by the payee, in effect the same as the one upon this note, said:

"* * * The holder was under no obligation to amend payment of the maker, and on his default to notify the guarantors, they undertook to pay, at all hazards, at maturity. * * * And their duty was * * * to go to the holder and take it up. The holder was under no obligation to hunt them and make a demand."

The Supreme Court of this state, in the case of Parker v. McKelvain, 17 Tex. 161, sustains the above enunciation, and likewise the Commission of Appeals, in the case of Tobin Canning Co. v. Frazer, 81 Tex. 411, 17 S. W. 25. See, also, Evans v. Bell, 45 Tex. 555. The Supreme Court, in the case of Donley v. Bush, 44 Tex. 1, speaking of a gauranty by Bush, a subsequent indorsee of notes, similar in language to the one involved herein, said:

"There can be no question that such a transfer of a negotiable instrument, before maturity, made for an independent consideration, amounts to a contract that it shall be paid at maturity, and in the event it is not so paid, the guarantor is at once liable on his contract."

This language may not have been necessary to the decision of that case, but is a recognition, we think, of the general rule upon the particular subject announced by the overwhelming weight of authority. Tilt-Kenney Shoe Co. v. Haggarty, 43 Tex. Civ. App. 337, 114 S. W. 386, reanhounces the above doctrine.

The San Antonio Court of Civil Appeals, in the case of Shropshire v. Smith, 37 S. W. 174, held that, upon an absolute guaranty, it was not necessary to sue the principal obligor. This doctrine would seem to be at rest if it were not for the opinion of the Supreme Court, in the case of Burrow v. Zapp, 69 Tex. 474, 6 S. W. 783, by Justice Stayton. The contracts of guaranty by the payee of notes were the same, in substance, in that case as the one in this case. It was asserted by appellant in that case that the testimony was insufficient to show the insolvency of the original maker of the note in order to excuse a suit against him at the time the guarantor was sued. Justice Stayton said that the evidence, consisting largely of the opinion of a witness, not objected to and not further developed as to the basis of the opinion, upon cross-examination, was sufficient. The case could only be authority in a negative sense. Appellant cites and quotes article 1843, under the title "Parties to Suits," and articles 6336 and 6337, embraced in the title of "Principal and Surety," of our Revised Statutes, claiming, without our setting out in detail said statutes, that the same are unambiguous as to guarantors and should control.

Article 587, in the title of "Bills, Notes and Other Written Instruments," prescribes:

"Assignors, indorsers and other parties not primarily liable upon any of the instruments named in this title may be jointly sued with their principal obligors, or may be sued alone in the cases provided for in articles 1842 and 1843."

Though W. B. Slaughter is a guarantor, however, if his liability to Morton, the holder of the note, upon the guaranty is unconditional and absolute, the statutes mentioned as applicable to this question must mean parties conditionally liable as to the directions in regard to parties to the suits, and in what manner they shall be sued. The second and third assignments are overruled.

[3] Appellant's sixth assignment of error is an assertion that the undisputed facts show that plaintiff entered into a binding contract for extension of the time of the payment of said note, without the knowledge or consent of W. B. Slaughter. It is said that J. G. Morton, owner of the note, and C. C. Slaughter, the guarantor, made this agreement; Slaughter representing Rawlings, the maker. The case was tried by the court without the aid of a jury.

The deed records of Dallam county show that on the date of the execution of the note, December 16, 1911, the First National Bank of Dalhart was the record owner of the land, and that thereafter, August 22, 1912, several months after the execution of the note, the bank conveyed the property to W. B. Slaughter, which conveyance was placed of record April 3, 1913, and that W. B. Slaughter, since said time, has, at least, been the ostensible holder and owner of the legal title and of said real estate. The alleged agreement of extension is based upon the testimony of Morton, plaintiff, had with C. C. Slaughter, the other guarantor upon this note, and upon statements made by said Slaughter, in effect that Rawlings desired an extension of the note (we are referring merely to the question of C. C. Slaughter's authority to represent Rawlings, the maker). The testimony by one of the attorneys, without objection, is that Rawlings said that he thought that was his signature to the note, "but that he knew nothing about the land as there never had been any deed delivered to him." Morton testified that upon inquiry of Rawlings, he was informed by the latter that W. B. Slaughter really owned the particular piece of land, and that Rawlings, except that he admitted his signature, did not know anything about the transaction. Rawlings never paid in person the interest indicated by the indorsements on the note, but the same was paid by Coney C. Slaughter. There are no conclusions of the trial court in the record, and we think he was entitled to find as a fact that Coney C. Slaughter, when he purported to represent Rawlings as the maker of the particular note, in regard to an exten-

sion, did not really represent him, and that Rawlings was some kind of a "straw man" in regard to the transaction and said note.

The judgment of the trial court is affirmed.