DODD et al. v. W. T. RAWLEIGH CO.
(No. 841.)

(Court of Civil Appeals of Texas. El Paso. April 19, 1918. Rehearing Denied May 9, 1918.)

1. PRINCIPAL AND SURETY ⬅6 — SURETYSHIP DISTINGUISHED FROM GUARANTY.

Where a defendant, a claimed guarantor, with his codefendant, the principal debtor, signed an instrument reading that in consideration of the extension of further time to pay an account, and of the creditor's extending further credit to the debtor, the undersigned jointly and severally guaranteed to the creditor unconditionally the payment in full of the balance due the creditor on account, as shown by its books at the date of the acceptance of the contract, etc., such contract was one of suretyship, and not of guaranty.

2. PRINCIPAL AND SURETY ⬅152—JOINDER AS DEFENDANTS.

Under Rev. St. 1911, arts. 1842, 1843, 6336, 6337, the latter two sections providing that no surety shall be sued unless his principal is joined with him, etc., a creditor company properly joined in one suit its debtor and the surety who signed with the debtor a purported guaranty of the account; it being a general doctrine that the rights of all parties in the subject-matter of litigation, and all matters growing out of the same transaction, should be settled in one suit.

3. CONTRACTS ⬅136, 137(1)—ILLEGALITY.

Where the contract grows out of and is connected with an illegal or immoral act, a court of equity will not enforce it; and if the contract is in part only connected with the illegal transaction, and growing immediately out of it, though in fact a mere contract, it is equally tainted by it.

4. CONTRACTS ⬅137(4) — IN RESTRAINT OF TRADE—SEPARATION OF LEGAL AND ILLEGAL PARTS.

Where a company sold merchandise to its agent for resale under a contract violative of the anti-trust act (Acts 28th Leg. c. 94), in that it provided he should have no other business, and subsequently sold the same under a new contract, which was free from illegality, the amount due under such valid contract being susceptible of separation, the company could recover judgment against such agent for the amount due under the valid contract.

5. MONOPOLIES ⬅17(2)—ANTI-TRUST ACT—CONTRACT—RESTRICTING PURCHASES.

A company's contract for the sale of merchandise to its agent, whereby the agent agreed "to have no other business or employment," not only required him to devote his entire time to the pursuit of the business, but restricted him to making purchases of merchandise from the company only, and so was violative of the anti-trust act and void.

Higgins, J., dissenting in part.

Appeal from District Court, Coleman County; John W. Goodwin, Judge.

Action by the W. T. Rawleigh Company against L. E. Dodd and another. From a judgment for plaintiff, defendants appeal. Affirmed.

Critz & Woodward, of Coleman, for appellants. Snodgrass, Dibrell & Snodgrass, of Coleman, for appellee.

Findings of Fact.

HARPER, C. J. March 21, 1913, the W. T. Rawleigh Medical Company and L. E. Dodd executed a writing providing in substance that the company agreed to sell to Dodd at wholesale prices a certain line of merchandise to be sold again on his own account. The writing contained the following stipulation:

"Therefore he [Dodd] agrees to have no other business or employment."

Under the above, upon the same paper was the following:

"In consideration of the W. T. Rawleigh Medical Company extending credit to the above-named person, we hereby guarantee to it jointly and severally the honest and faithful performance of the said contract by him, waiving acceptance to this guaranty and all notice, and agree that the written acknowledgment of his account or any judgment against said principal shall in every respect bind and be conclusive against the undersigned and that any extension

of time shall not release us from liability under this guaranty, provided that release may be had from this guaranty at any time upon payment of the balance on account due from said principal to the W. T. Rawleigh Medical Company.

"(Responsible men sign below in ink or indelible pencil.)                V. M. Skipwith.
                "T. Narderke.
                "W. T. Walton."

On October 24, 1913, a writing substantially the same in its provisions as the above was executed by the company and Dodd, except it did not contain the stipulation that Dodd should have no other business. Upon the same sheet of paper, the following obligation was written and executed:

"For and in consideration of the extension of further time in which to pay his account for goods previously sold to the above party of the second part, and in further consideration of the W. T. Rawleigh Medical Company extending further credit to him, we, the undersigned, do hereby jointly and severally guarantee unto said the W. T. Rawleigh Medical Company, unconditionally, first, the payment in full of the balance due said company on account as shown by its books at the date of the acceptance of this contract, and, second, the full and complete payment to said company of any and all indebtedness incurred under the terms of the within instrument by the party of the second part, named as such therein, to which terms we fully assent waiving acceptance of this guaranty and all notice, and agree that the written acknowledgment of his account, or any judgment against said party of the second part, shall in every respect bind and be conclusive against the undersigned, and that any extension of time shall not release us from liability under this guaranty.

"(Responsible men sign below in ink or indelible pencil.)            Wm. Godwin.
                "W. T. Walton"

—indorsed on the back:

"Accepted, January 31, 1914."

The company sold and delivered to Dodd goods to the value of $821.75 under the first contract, and $688.56 under the second. Dodd paid $320 prior to January 31, 1914, and $198.45 after the latter date. Appellees filed this suit against L. E. Dodd upon verified account for balance due of $991.86, for merchandise sold and delivered under these contracts, and against Wm. Godwin upon the written guaranty; the others being out of the state.

The cause was submitted to jury upon special issues, to which they made the findings: (1) That the plaintiff at the instance and request of defendant sold and delivered the goods to the latter. (2) That he agreed to pay the amounts specified, in the sum of $821.75 prior to December 31, 1913, and $688.56 after the latter date, and that Dodd had paid $320 prior to January, 1914, on said account, and $198.45 on it after the latter date. The court in its decree found that "goods to the amount of $688.56 were sold and delivered under the contract accepted January 31, 1914, upon which payments have been made to the amount of $198.15, leaving a balance due of $490.11," for which latter amount judgment was entered against L. E. Dodd, as principal, and Wm. Godwin, as surety, with 6 per cent. interest, from which Godwin and Dodd appealed.

[1] First, it is urged that there is a misjoinder of parties and causes of action. There is good authority for the proposition that, where a guarantor is bound by a separate contract of absolute guaranty, he cannot be joined in the same suit with the principal. Brandt, Suretyship & Guaranty, § 2; Young v. Bank of Miami, 161 S. W. 438; Shropshire v. Smith, 37 S. W. 174; Id., 37 S. W. 479; Page v. White, S. W. Mac. Co., 34 S. W. 988. Is Godwin bound by a separate contract? The contract made the basis of this action is the one signed by both parties, is one and the same transaction, and we think constitutes a contract of suretyship, and not of guaranty.

[2] "It being the general doctrine of our courts that the rights of all parties in the subject-matter of litigation and that all matters growing out of the same transaction should be settled in one suit," we hold that the court did not err in overruling the plea in abatement. Skipwith v. Hurt, 94 Tex. 322, 60 S. W. 423; Slaughter v. Morton, 185 S. W. 905; Fluhart et al. v. Rawleigh Company, 126 Ark. 307, 190 S. W. 118. It is therefore governed by articles 1842, 1843, 6336, 6337, Rev. Civ. Stat.:

Article 1842: "The acceptor of any bill of exchange, or any other principal obligor in any contract, may be sued either alone or jointly with any other party who may be liable thereon; but no judgment shall be rendered against such other party not primarily liable on such bill or other contract, unless judgment shall have been previously, or shall be at the same time, rendered against such acceptor or other principal obligor, except where the plaintiff may discontinue his suit against such principal obligor as hereinafter provided."

Article 1843: "The assignor, indorser, guarantor and surety upon any contract, and the drawer of any bill which has been accepted, may be sued without the necessity of previously, or at the same time, suing the maker, acceptor or other principal obligor, when he resides beyond the limits of the state, or in such part of the same that he cannot be reached by the ordinary process of law, or when his residence is unknown and cannot be ascertained by the use of reasonable diligence, or when he is dead, or actually or notoriously insolvent."

Article 6336: "No surety shall be sued, unless his principal is joined with him, or unless a judgment has previously been rendered against his principal, except in the cases provided for in article 1843."

Article 6337: "The remedy provided for sureties by this title extends to indorsers, guarantors, drawers of bills which have been accepted, and every other suretyship, whether created by express contract, or by the operation of law."

[3] Is the contract of suretyship void because a part of the debt secured by it was illegal? The rule is that, where the contract grows out of and is connected with an illegal or immoral act, a court of equity will not enforce it, and if the contract be in part only connected with the illegal transaction, and growing immediately out of it, though it be in fact a mere contract, it is equally tainted by it. Seeligson v. Lewis, 65 Tex. 215, 57 Am. Rep. 593; Wegner Bros. v. Bier-

ing & Co., 65 Tex. 506; Prudential Life Insurance Co. v. Pearson, 188 S. W. 513.

[4] It is equally well settled that, where the legal can be separated from the illegal transaction, the contract is good for so much as is lawful. We think the trial court properly held that the sales under the first contract, which provided that Dodd should have no other business, were in violation of the Texas anti-trust act, and rendered that contract illegal and void (Rawleigh Co. v. Fitzpatrick, 184 S. W. 549), and that the sales made under the contract of January 31, 1914, being free from illegality, and the amount due thereunder being susceptible of separation, he properly rendered judgment for the amount due under the latter (Haswell v. Blake, 90 S. W. 1125).

[5] Appellee urges that the contract does not restrict Dodd to making purchases of goods, wares, and merchandise from the appellee only, but only seeks to require him to devote his entire time to the pursuit of the mercantile business. The majority of the court are of the opinion that the phrase in the contract, "Therefore he [Dodd] agrees to have no other business or employment," conveys the double idea that he binds himself to have or pursue no other business than that of buying the goods specified in the contract from the appellee, and from no other, and that he will sell only such goods as he buys from appellee under this contract, and therefore it comes within the inhibition of the statute invoked to the extent of the sales made under the first contract.

Judge HIGGINS does not altogether concur in the above opinion. His views upon the questions presented by this appeal are as follows:

1. It makes no difference whether the contracts sued upon be contracts of suretyship, or of guaranty. He therefore expresses no opinion as to the nature thereof. In either event he is of the opinion that appellee had the right to join Dodd and Godwin in the same suit. The rule which obtains in some jurisdictions, that a guarantor must be sued separately, does not apply under the statutes and decisions of this state. Articles 1842, 1843, 6336, 6337, R. S.; Adams v. First National Bank of Waco, 178 S. W. 993; Slaughter v. Morton, 185 S. W. 905; Cleveland v. Campbell, 38 S. W. 219; Kenedy Town & Improvement Co. v. First Nat. Bank, 136 S. W. 558; Allen v. Edrington, 125 S. W. 362.

2. The clause in the contract of March 21, 1913, whereby Dodd agreed to have no other business or employment, did not violate the Texas anti-trust laws. The contract does not restrict Dodd to making purchases of goods, wares, and merchandise from appellee only, but in effect merely requires him to devote his entire time and attention to the mercantile business. This alone does not render the contract obnoxious to our anti-

trust statute. Gin Co. v. Riddlesperger, 108 Tex. 273, 192 S. W. 530. In any event, the contract is susceptible of this construction, and that construction should be adopted which will make the contract lawful, rather than a construction which would render it illegal. Foard County v. Sandifer, 105 Tex. 420, 151 S. W. 523.

3. The contract of March 21, 1913, being lawful, appellee should have recovered the unpaid balance for the goods purchased thereunder, and its cross-assignments should be sustained, and judgment in its favor rendered against appellants for such balance. Woeltz v. Woeltz, 93 Tex. 548, 57 S. W. 35; Duren v. Railway Co., 86 Tex. 287, 24 S. W. 258.

Affirmed.