### THE CITY OF CORPUS CHRISTI v. JOHN WOESSNER.

(Case No. 1333.)

1. CITY WARRANTS, MAY BE ISSUED WHEN.— The issuance of city warrants on account of expenses of a city, which do not exceed the current revenue derived from taxation, permitted by law to be levied to meet current expenses, and such other revenue as a city may have from other sources than taxation, cannot be said to be the creation of a debt prohibited by law unless a special tax be levied to meet the interest and create a sinking fund.

2. CONSTITUTION AND STATUTE CONSTRUED.— Sec. 5, art. XI, of the constitution of the state, and art. 427 of the Revised Statutes, construed.

3. CITY ORDINANCE — STATUTE CONSTRUED.— An ordinance which practically prohibits the payment of any debt contrac.ed before a specified time, unless in the discretion of the officer intrusted with the only fund from which payment can be made, he should see proper to make payment by compromise or otherwise, and this without reference to the justness of the debt or the condition of the city treasury, is not authorized by art. 372, R. S., and is void when passed by a city incorporated under the general laws of the state.

4. INTEREST-BEARING CITY WARRANTS — SPECIAL TAX.— Cities have power under the general laws (R. S., art. 419) to issue to their creditors interest-bearing evidences of debt; but when the city has an ample revenue outside of that which the law authorizes to meet current expenses, to meet such obligations, a special tax for that purpose would be without authority of law.

5. MANDAMUS AGAINST CITY TO COMPEL PAYMENT OF WARRANTS.— See opinion for facts under which it was held that a *mandamus* properly issued at the suit of the holder of a city warrant who had obtained judgment to compel the aldermen and officers of the city to pay over to him the surplus revenues of the city, over its current and ordinary expenses, at the end of each year, until his judgment with interest was satisfied. Also where an injunction properly issued restraining the aldermen and officers of the city from paying out any funds for purposes other than ordinary current expenses of the city government until a judgment was satisfied.

APPEAL from Nueces. Tried below before the Hon. John C. Russell.

The opinion states the case.

*Welch & Givens,* for appellant.'

I. The authority or power of an incorporated city to issue treasury warrants or create a debt, and the ordinances or resolutions of the city council of that city authorizing or validating the same, should be pleaded in an action upon such treasury warrants or debt created. Appellant filed a general demurrer to plaintiff's petition, and also specially demurred thereto because said petition failed to recite any ordinance or resolution of the city of Corpus Christi authorizing or creating the debt sued on. The court overruled the general and special demurrer embracing the above, and appellant excepted. Const., art. III, sec. 53; art. XI, secs. 4, 5, 7; R. S., arts. 419, 427, 365; City of Marshal *v.* Bailey, 27 Tex., 686; City of Bryan *v.* Page, 51 Tex., 532; Williams *v.* Davidson, 43 Tex., 2; Dillon on Mun. Corp., p. 493.

II. It is error for a trial court to admit, over objections, as evidence in a suit for debt, upon warrants, against a municipal corporation, such city warrants, until it is shown the conditions precedent of their creation, as fixed by statute, have been complied with. Const., art. III, sec. 53; art. XI, secs. 4, 5, 7; R. S., arts. 419, 427, 365, 370, 371, 372; City of Bryan *v.* Page, 51 Tex., 532; Williams *v.* Davidson, 43 Tex., 2; Mayor *v.* Ray, 19 Wall., 468; Glass *v.* Ashbury, 49 Cal., 571; Dillon on Mun. Corp., p. 493, note 2, and pp. 450 and 451; Cooley's Const. Lim., pp. 237, 238, 257; Sedgwick on Const. of Stat. and Const. Law, p. 411; Merriwether *et al. v.* Garrett *et al.,* 23 Alb. L. J., p. 33. Municipal corporations have in this state no power to create debts except in accordance with the constitution and law, framed to keep them within bounds. As municipal debts can but be the creation of the statute, every condition precedent of the statute must be complied with. The creditor is bound to see the conditions complied with, and his rights as a creditor are contingent upon a strict adherence to the letter of the law by the municipal debtor. As his rights as a creditor are derived from the statute, he must not only plead facts bringing him within the provisions of the statute as a creditor, but the burden of proof is upon him to adduce facts in evidence to show himself within reach of the statute. In this case, after exhausting her ordinary revenues, a city creates a so-styled floating debt of thousands of dollars, and in disregard of every constitutional and statutory provision regulating municipal indebtedness. The creditor who sanctions the illegal action and risks his money upon such ventures, and absorbs by purchase the evidences of such indebtedness, has surely no strength of claim in the mere possession of evidence of the illegal transaction; some-

thing more is required. The evidence he offers must show upon its face an authority of law for his possession; provision made to liquidate the same, as by the constitution and law provided; and however great the seeming hardship, if he cannot show an indebtedness of the municipality he sues, within the limits and conditions imposed upon it by law, he is without remedy.

III. It is error to grant a peremptory writ of *mandamus* against a municipal corporation to control the discretionary power of its city council and officers, unless refusal or unreasonable neglect be shown by them to perform some duty clearly enjoined upon them by law. Const., art. XI, secs. 4, 6 and 7; R. S., arts. 370, 371, 372, 419, 420, 427, 437; Durrett v. Crosby, 28 Tex., 687; Tabor v. Com'r, 29 Tex., 508; Horton v. Pace, 9 Tex., 81; Commissioners v. Smith, 5 Tex., 471; Arberry v. Beavers, 6 Tex., 457; Dillon on Mun. Corp., secs. 832, 851, 854, 862, 863.

IV. The judgment of the court was contrary to the law and the evidence, and a new trial should have been granted. No debt shall ever be created by any city, unless at the same time provision be made to assess and collect annually, a sufficient sum to pay the interest thereon and create a sinking fund of at least two per cent. thereon. Const. 1876, art. XI, secs. 5, 7; R. S., art. 427. No order on the treasurer of a city shall be paid by him unless said order shows upon its face that the city council has directed its issuance, and for what purpose. R. S., art. 365. The city council shall have the management and control of the finances of the city; shall have power to appropriate money and provide for payment of the debts and expenses of the city, and to provide by ordinance special funds for special purposes, and make the same disbursable only for the purpose for which the fund was created. R. S., arts. 370, 371, 372. The city council may also levy, assess and collect taxes necessary to pay the interest and provide a sinking fund, to satisfy any indebtedness heretofore legally made and undertaken; but all such taxes shall be assessed and collected separately from that assessed and collected for current expenses of municipal government. R. S., art. 437. Municipal corporations can exercise those powers only which are expressly or impliedly conferred, subject to such regulations or restrictions as are annexed to the grant. Pye v. Peterson, 45 Tex., 312. The charter by which a municipal corporation is created is its organic act. It can do no act and make no contract not authorized thereby. Williams v. Davidson, 43 Tex., 2. And a city cannot be bound by an implied contract to do that which it is forbidden to do by its charter. City of Bryan v. Page, 51 Tex., 532.

*McCampbell & Givens*, for appellee.

STAYTON, ASSOCIATE JUSTICE.— This action was brought by John Woessner against the city of Corpus Christi, upon forty-eight warrants drawn by the mayor and secretary of the city upon the treasurer.

Thirty-two of the warrants, not interest-bearing, were drawn upon claims which had been audited by the city council for matters pertaining to the current business and expense of the city, of all of which the appellee had become the owner.

Fifteen of the warrants were drawn in favor of officers of the city for current salaries, which had been fixed by the city council, which had directed that they should be interest-bearing, and they were so made upon their faces; of all of these the appellee had become the owner.

The other warrant was drawn in favor of the appellee in cancellation and settlement of outstanding warrants of which he was the owner, which amounted to nearly double the sum for which the warrant was drawn. This warrant was made interest-bearing by order of the city council.

All of the warrants were drawn to meet current expenses of the city during the years 1878 and 1879, and it appears that the taxes authorized by law to meet the current expenses of the city with funds which, it seems, the city derived from certain wharf privileges, would have been more than sufficient to meet the current expenses and pay all of the warrants; but in the year 1879 the city (by what authority is not shown) appropriated $10,000 of the revenue arising from its wharf privileges to assist in deepening Corpus Christi pass.

In the beginning of the next municipal year, April, 1880, appellant passed an ordinance, the third section of which, in substance, declares that "all sums of money now in the treasury of the city, or that may come into its hands from any source (except school funds), be and are set apart and appropriated to meet current expenses;" and the eleventh section of said ordinance requires the city treasurer to transfer all balances in his hands belonging to the city (except school funds) to the current expense funds upon the books, and appropriating said fund for the expenses of the city accruing from the 13th of April, 1880; "and no warrant, scrip, or claim of debt, bearing date of issuance or approval prior to said 13th of April, 1880, shall be paid therefrom, except as may hereafter be provided."

March 8, 1881, appellant passed another ordinance to provide a sanitary, street and old-debt compromise fund, authorizing the mayor to draw from the wharf company for the city $1,301.12, which sum is by said ordinance appropriated and made a special fund in the mayor's hands for sanitary, street and debt compromise fund, and to be expended by the mayor for said purposes, or either of them, at his discretion.

May 2, 1881, appellant passed another ordinance, the first section of which, in substance, is as follows: "All the receipts, revenues and collections due, or to become due, after March 31, 1881, or to be paid to said city from the Central Wharf and Warehouse Company; it being intended by this section of this ordinance that every and all receipts of money from every or any source, belonging or coming to said city, shall be and are hereby appropriated to said current expense fund."

The second section authorizes the mayor, when in his judgment there is a surplus in the current expense fund beyond any demand incident to the paying of the current expenses of said city, its officers and employees, to use said surplus in the liquidation, by compromise or otherwise, of any old debt of said city of date prior to May 1, 1880.

The third section instructs and directs the treasurer to pay no warrant, draft or check against said current expense fund of date previous to April 13, 1881.

It was admitted that the only provision made by the appellant for the payment of the warrants sued on was the levy and assessing of an annual ad valorem tax of one-fourth of one per centum at the time and in the manner required by law, and the levy and collection of the occupation taxes allowed by law; and that no special tax to pay the interest and to create a sinking fund of two per centum was ever levied, assessed or collected by the city.

It was shown by the treasurer of appellant that the city had in the treasury $2,000 current expense fund, and the mayor $1,000 of sanitary, street and old-debt compromise fund, and that it was receiving from the wharf company $1,000 quarterly in advance, beginning April 1, 1881, and ending in 1893.

Appellee presented his warrants to and made demand of payment, both to the treasurer and mayor, previous to bringing his suit, and payment was refused by the treasurer; the mayor offered to pay if appellee would scale one-half and wait twelve months for half of that half.

Appellant was incorporated under and by virtue of title XVII,

relating to cities and towns, chapters 1 to 10, inclusive, general laws of the state of Texas, and has less than ten thousand inhabitants, and so had at the date of the adoption of the general charter, April 5, A. D. 1876.

The court rendered judgment for appellee for the total amount of said warrants, and for any interest expressed upon their face; and the judgment rendered also provided for peremptory *mandamus* to issue to the aldermen and officers of said city to pay over to appellee the surplus of revenues of said city, over her current and ordinary expenses, at the end of each year, until the whole judgment, with interest, is satisfied; and for injunction restraining said aldermen and officers of said city from paying out any funds for purposes other than ordinary current expenses of her local government, until said judgment is satisfied.

It is claimed that all of the warrants were illegally issued, for the reason that their issuance was the creation of a debt without making provision to assess and collect a sufficient sum annually to pay the interest thereon, and create a sinking fund of at least two per cent. thereon, as it is contended is required by sec. 5, art. XI, of the constitution, and by art. 427 of the Revised Statutes.

In the view which we take of this matter, it is unimportant to inquire whether the sections of the constitution and statute referred to have any application to cities other than such as have more than ten thousand inhabitants.

We are of the opinion that the issuance of warrants on current expenses of a city, which do not exceed the current revenue derived from taxation, permitted by law to be levied to meet current expenses, and such other revenue as a city may have from other sources than taxation, cannot be said to be the creation of a debt prohibited by law unless a special tax be levied to meet the interest and create a sinking fund.

The evidence shows that the revenue of the city for the year 1879, if it had been applied to proper municipal purposes, would have been more than sufficient to meet the payment of the warrants sued upon, after paying all other current and proper expenses. And it further appears that in addition to the money raised by taxation, permitted by law to meet current expenses, the city has an income of $4,000 per year, for many years to come, from her wharf interests; and that from these two sources, at the time of the trial of this cause, there was a surplus in the treasury.

It is claimed, however, that the funds in the treasury belonged to special funds, set apart by ordinance to specific purposes, and that

they could not be disbursed for any other. The statute does provide that special funds may be created for special purposes (R. S., 372); but this does not contemplate that a fund not needed to pay current expenses may be placed in the hands of any officer of the corporation, to be used at his discretion as a *debt compromise fund*, whereby money may be locked up which creditors ought to have, until they may consent to discount their claims, just in every respect, or the officer to whom the discretion is confided may see proper to pay them.

The ordinance of 1880 practically prohibited the payment of any debt which accrued prior to April 13, 1880, as did that of 1881 prohibit the payment of any debt which accrued prior to April 13, 1881, and this without reference to the justice of the debt, or state of the treasury, unless in the discretion of the officer intrusted with the only fund which the ordinances permitted to be so used, he should see proper to make a payment by compromise or otherwise.

Cities have power under the statute to issue to creditors interest-bearing evidences of debt (R. S., 419); and it would seem that when, as in this case, the city has ample revenue, outside of that which the law authorizes to be levied to meet current expenses, to meet such obligations, that a tax for that purpose would not only be unnecessary, but unlawful.

The remedy given to the appellee by the judgment of the court to enforce the payment of his debt appears to be proper.

The judgment is affirmed.

AFFIRMED.