### AUSTIN BROS. v. MONTAGUE COUNTY et al.    (No. 11195.) *

(Court of Civil Appeals of Texas. Fort Worth. Feb. 27, 1926. Rehearing Denied Jan. 29, 1927.)

**1. Counties ⬳149—County warrants, payable several years after issuance, held "debt" within Constitution, prohibiting incurring debt without providing tax for payment thereof (Const. art. 11, § 7).**

County warrants, issued in 1916, payable in 1921 and 1922, for engine and grader used for road work, *held* to constitute a debt within meaning of Const. art. 11, § 7, forbidding incurring debt without levying and collecting sufficient tax to pay interest and provide sinking fund at time of creating debt.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Debt.]

**2. Counties ⬳170(4)—Evidence held not to show sufficient fund on hand at date county warrants were issued to have paid them.**

In suit on county warrants, evidence *held* not to show that sufficient fund of current year was on hand at date of issuance of warrants to have paid them.

**3. Counties ⬳149—Contract making county warrants payable out of funds of future years held not construable as creating debt on current fund, payable in future years.**

Contract for purchase of engine and grader, making county warrants for same payable out of funds of future years, could not be construed as creating debt on current fund, payable in future years.

Appeal from District Court, Montague County; E. W. Napier, Judge.

─────────────

⬳For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

*Writ of error granted March 30, 1927.

Suit by Austin Bros. against Montague County and others. From a judgment for defendants on a peremptory instruction to jury, plaintiff appeals. Affirmed.

Donald & Donald, of Bowie, for appellant.

T. H. Yarbrough, of Montague, and J. S. Jameson, of Fayetteville, Ark., for appellees.

CONNER, C. J. On January 29, 1923, Austin Bros., a corporation, instituted this suit against Montague county, making its proper officers parties, for the sum of $2,423.57, alleged to be due as principal and interest on warrants Nos. 133 and 134.

The undisputed facts show that D. T. Herring, commissioner of precinct No. 3, Montague county, Tex., in 1916 began negotiations with Austin Bros. for the purchase of an engine and grader to be used in the improvement of public roads in his district. After a demonstration, the commissioner reported the matter to the commissioners' court, which, after investigating the condition of the finances of that precinct, and in view of the outstanding indebtedness of the precinct, entered the following order:

"No. 5014. In re Purchase of Grader for Prec. No. 3. August 17, 1916. This day came on for consideration the matter of issuing warrants for an engine and grader for precinct No. 3, and it is ordered by the court that warrants aggregating $2,600 be issued to Austin Bros. in three warrants, as follows, to wit: $866.65, 6 per cent. interest, due February 1, 1920; $866.65, 6 per cent. interest, due February 1, 1921; $866.70, 6 per cent. interest, due February 1, 1922. Interest payable annually on the 1st day of February."

Pursuant to the order so made the clerk of the commissioners' court issued three warrants numbered 132, 133, and 134, respectively. The warrants were duly registered with the county treasurer on the 26th day of August, 1916. Warrant No. 133, declared on, reads as follows:

"No. 133.　　　　　　　　　　　$866.65.

"[In red ink:] Feb. 1, 1921. Montague County. The county treasurer will pay to Austin Bros. or bearer the sum of eight hundred sixty-six & 65/100 out of the (with interest at 6 per cent. per annum) No. 3 fund as allowed at the August term, 1916, of the county commissioners' court for engine and grader.

"Given under my hand and seal at Montague, Tex., this 17th day of August, 1916.

　　　"By I. L. Chandler, County Clerk.

"Interest payable annually on February 1st each year. No. 3999. Sec. Class. Registered this the 26th day of August, 1916.

　　　"D. D. Jackson, County Treasurer."

Warrant 134, also declared upon, is in the same form as the one quoted, except it is made payable February 1, 1922. Warrant 132, first maturing, was paid. But when warrants 133 and 134 were later presented, payment was refused by the county, and hence this suit.

Other than the order of the commissioners' court dated August 17, 1916, no orders relating to the purchase of an engine and grader from Austin Bros. were shown in the minutes of said court. It is undisputed that, at the time of the order of the commissioners' court authorizing the issuance of the warrants under consideration, no provision, by tax levy or otherwise, was made for the payment of the warrants. It is shown that on August 1, 1916, the road and bridge fund of precinct No. 3 of Montague county amounted to $285.04; that in precinct No. 1 there was a balance of $1,169.10; and that in precinct No. 2 there was a balance of $1,032.72; and in precinct No. 4 a balance of $2,668.67. It was further shown that the total renditions for the year 1916 amounted to $13,182,485, and that a tax levy of 15 cents on the $100 valuation had been made for the year 1916 for the purpose of creating a road and bridge fund for that year. It was further shown that the outstanding registered claims prior to August 17, 1916, against the road and bridge fund of precinct No. 3, was $8,764.80, and that the total indebtedness for the entire county against the road and bridge fund at that time was $15,269.97. The order levying the 15 cents road and bridge tax for the year 1916 was made on May 12, 1916.

Homer B. Latham testified in behalf of defendant as follows:

"My name is Homer B. Latham. I was county judge of Montague county in the year 1916. I was the presiding officer of the commissioners' court.

"I remember a transaction with Austin Bros. in regard to the purchase of an engine and grader for precinct No. 3. I have looked at the warrants you are questioning me about and have noted the dates thereon. As to whether or not anything was said about how these warrants were to be paid at the time the order was posted, will state my recollection is that, at the time this transaction took place, there was some conference between the commissioner from this precinct and the county treasurer at that time as to the indebtedness, the outstanding indebtedness of the precinct, and that the warrants for this grader and engine were made payable at their due dates, in view of the registered outstanding indebtedness at that time. It is my recollection that there was some discussion of that. I wouldn't say I said it, whether I said it or who said it, but, as I remember it, there was a checkup made of the indebtedness at that time, outstanding, so these warrants could be put over a sufficient length of time to be taken care of. There was such a discussion had, but as to who had it, I wouldn't be positive, but it was in the court. There was no arrangement made for the paying of those warrants out of the road and bridge fund for the year 1916, and there was no provision made on the levying of the taxes to take care of these notes. There was no special provision made for the payment of these warrants, at any time. They were issued, as I have previously stated, in view of the outstanding indebtedness, and given a time that was

thought, by the court, would be reached at their due date."

T. C. Davis testified in behalf of appellant:

"I was a member of the commissioners' court of Montague county in August, 1916, and I was present, as a member of that court, at the August term of the court. I remember something about a transaction had in connection with an engine and grader for precinct No. 3 being under consideration by the court. I remember that such a discussion was up; in fact the grader and engine business was discussed quite a great deal in the court along about that time. As best I remember, the court had a discussion in regard to the purchase of this engine and grader, and it was discussed as to when that district would be able to pay those warrants, or whether it was able to purchase the grader and engine. As I remember it, there was an investigation of the records to show how much indebtedness there was against that district, and when that district would be able to pay for the engine and grader, provided they purchased it, and as to what time it was determined that this precinct could pay for this grader and engine, will state, as I remember it now, the time was set far enough off—I don't remember what dates was set—but the time was set far enough in the future that the other indebtedness against that district would be paid before these warrants came due. As I remember it, the time was set after 1916 or 1917. I never have seen these warrants that I know of. As to how many years in the future it was determined at that time, it would be before this indebtedness for this engine and grader could be taken care of, will state I don't remember.

"Q. Was it several years? A. It would be several years, possibly four, five, or six years; maybe longer. There was no mention made or provision made for the setting aside of a fund in 1916 for the payment of that debt."

At the conclusion of the testimony the court gave a peremptory instruction to the jury in favor of the defendant, and entered its judgment accordingly. From such judgment the plaintiff has prosecuted this appeal.

The good faith of the commissioners' court of Montague county in making the purchase of the road machinery mentioned and in the issuance of the warrants under consideration and of the appellants' acceptance of those warrants is not questioned, and it seems regrettable that proper proceedings to satisfy the debt evidenced by the warrants were not taken, for the honor and integrity of men, in both their individual and collective capacities, must strongly prompt them to discharge an honest debt when the same can be done. In the facts of this case, however, we have been unable to find any sustainable theory upon which we can disturb the conclusion of the trial judge.

Section 7, art. 11, of our Constitution, declares, so far as pertinent, that:

"No debt for any purpose shall ever be incurred in any manner by any city or county unless provision is made, at the time of creating the same, for levying and collecting a suffi-cient tax to pay the interest thereon and provide at least 2% as a sinking fund."

[1] It seems clear, both by the terms of the warrants and from the testimony of the commissioners, that the sums specified in the warrants were not to be paid out of the current funds of the year of their issuance. This being true, we think there can be no question under the authorities but that the obligation constituted "a debt" within the meaning of the constitutional provision we have quoted.

In the case of McNeill v. City of Waco, 89 Tex. 83, 33 S. W. 322, it was said on this subject by our Supreme Court:

"An obligation binding the city to pay for a matter relating to its ordinary expenses, such payment being, in contemplation of the parties, not intended to be made out of the current funds of the year in which the expenditure is made, or any funds on hand lawfully applicable thereto, would be a debt, within the meaning of the Constitution."

In the case of City of Terrell v. Dessaint, 71 Tex. 770, 9 S. W. 593, our Supreme Court also said on the subject:

"We freely concede that debts for the ordinary running expenses of a city, payable within a year out of the incoming revenues of the year, and with other indebtedness not clearly in excess of the yearly income for general purposes, can be created by a city. But we think that a debt for current expenses in order to be valid, without a compliance with the constitutional and statutory requirements to which we have referred, must run concurrently with the current resources for such purposes, and that such a debt cannot be created without such compliance, which matures at such a time as would make it a charge upon the future resources of the city."

The case of J. I. Case Threshing Machine Co. v. Camp County (Tex. Civ. App.) 218 S. W. 1, was one very similar to the one we have here. In that case the machinery company instituted suit against the county upon warrants for $900 each, dated August 13, 1913, and directing the county treasurer to pay on March 1, 1916, the same being the amount allowed by the commissioners' court of said county at its August term, 1913, for one J. I. Case gas traction engine and two No. 1 perfection road graders. There, as in this case, no special provision had been made for the payment of warrants, and it was held that they were invalid. It was further held that it would be immaterial that other funds existed out of which the warrants might have been paid, inasmuch as such other funds were subject to appropriation of the commissioners' court to the payment of other obligations.

[2, 3] Appellant vigorously insists that it was shown that a sufficient fund was on hand at the date of the issuance of the warrants here involved to have paid them. We do not

think this can be said, inasmuch as the total outstanding obligations payable out of the funds of the current year has not been shown, and it is clear that the commissioners' court at the time of the purchase, after investigation, concluded that they would not be able to discharge all obligations of the outstanding year, and also pay the warrants in question. At all events, the contract of purchase made the warrants payable out of funds of future years, and the warrants were accepted under such terms. We do not think it can be said, as urged, that the contract is to be construed as creating a debt upon the current fund payable in future years. The warrants bear interest, and we will not assume that the commissioners' court would, out of the current fund, set aside a sum sufficient to pay the warrants and hold such fund until the due date of the warrants, with interest thereon payable by the appellee county. We conclude that it is plain from the authorities already stated that the action of the trial court must be approved and the judgment below affirmed. See, also, Toole v. First National Bank of Hemphill (Tex. Civ. App.) 168 S. W. 423; American Road Machine Co. v. City of Ballinger (Tex. Civ. App.) 210 S. W. 265; Rogers National Bank v. Marion County (Tex. Civ. App.) 181 S. W. 884.

Judgment affirmed.

## On Motion for Rehearing.

We have considered the motion for rehearing in this case, and carefully examined the recent decisions urged in support of the proposition that our conclusions as expressed in our original opinion are erroneous. The case of Derrett v. Britton, 35 Tex. Civ. App. 485, 80 S. W. 562, we think is distinguishable from the case before us, in that there it was alleged, and on demurrer taken as true, that sufficient funds to pay the debt involved was on hand, while in this case it was found, and the evidence undoubtedly tends to show, that no sufficient funds of the current year in which the debt was incurred was available or under the control of the commissioners' court. It is to be noted also that the case of McNeill v. City of Waco, 89 Tex. 83, 33 S. W. 322, from which we quoted in our original opinion, is cited with approval. The same case was also cited with approval in the case of Austin Bros. v. Patton (Tex. Com. App.) 288 S. W. 182, now insistently urged. In this case, viz. Austin Bros. v. Patton, the court said that the warrants forming the basis of that suit were ambiguous, and necessarily promised payment, with one exception, out of the current funds. If, as indicated, the warrants declared upon without ambiguity so provided, oral testimony, as the court held, would be inadmissible to show otherwise. The court said:

"The county has solemnly promised payment out of current funds for the year, then under its immediate control, in an amount not shown to have been beyond its right of reasonable expectation."

It is evident that the case is not authority which requires us to reverse our former ruling. Without reviewing it, we think the other case of Clark & Courts v. San Jacinto Co., 18 Tex. Civ. App. 204, 45 S. W. 315, is also distinguishable from the case here.

Other contentions made in behalf of appellant have also been examined, but we find nothing that we think would authorize us to grant the motion, and it is accordingly overruled.