### MORRISON et al. v. KOHLER et al.
### No. 4470.

Court of Civil Appeals of Texas. Beaumont.
Dec. 18, 1947.

Rehearing Denied Jan. 14, 1948.

W. A. Tatum and John L. Bell, both of Beaumont, for appellants.

Cecil & Keith, of Beaumont, for appellees

COE, Chief Justice.

This cause originated as a mandamus proceeding brought by C. A. Kohler and Ben F. Shipley against Dwight Morrison, County Treasurer of Jefferson County, Texas to compel Morrison, in his official capacity, to sign and deliver to the relators four warrants of $4,175 each, drawn against the respective Road and Bridge funds of Jefferson County, Texas. Walter Casey et al. intervened in said cause, they being taxpayers of Jefferson County; M. F. Rumery et al., likewise taxpayers, filed cause No. 60,473 and the within suit and cause No. 60,473 were consolidated. The suits of the taxpayers are for injunctive relief restraining payment of the warrants and such taxpayers impleaded Jefferson County, the County Commissioners presently serving and former County Commissioners serving at the time the warrants were issued. Upon a trial before a court the mandamus as prayed for by relators was ordered issued and all injunctive relief prayed for by intervenors and the plaintiffs in cause No. 60,473 was denied. Morrison, the intervenors and the plaintiffs Rumery, et al., in cause No. 60,473 have duly perfected their appeal to this court.

Upon request being made therefor by appellants, the trial court filed findings of fact and conclusions of law. Such findings and conclusions are as follows:

### Findings of Fact.

That relators, C. A. Kohler and Ben F. Shipley, are now and have been at all times material hereto professional engineers, duly registered and licensed under the provisions of Title 52A, Article 3271a et seq., Revised Statutes of 1925, as amended by the act of the 45th Legislature of the State of Texas, Vernon's Ann.Civ.St. art. 3271a, and have been engaged in the practice of professional engineering in Jefferson County, Texas, for many years prior to the institution of this suit.

2. That the respondent is a resident citizen of Jefferson County, Texas, and is now and has been at all times material hereto the duly elected, acting and qualified Treasurer of Jefferson County, Texas, and is sued herein in his official capacity as Treasurer of Jefferson County, Texas.

3. That on or about June 17, 1946, the relators entered into a verbal agreement and contract with the Commissioners' Court of Jefferson County, Texas, under the terms of which they were employed by said Commissioners' Court to prepare complete maps, estimates, descriptions, specifications for various road types and compilations of estimated costs by road types, costs by precincts, estimated total county, state and federal expenditures, and all other engineering data necessary to fully furnish complete and accurate preliminary engineering data covering the complete county-wide system of improved roads which was intended to be constructed by Jefferson County under a proposed Six Million, Six Hundred Thousand Dollar Road Bond Issue.

4. That relators' contract and agreement with and employment by the Commissioners' Court of Jefferson County, was to perform the engineering services set forth in Finding of Fact No. 3 herein, and in consideration of the performance of said services, the said Commissioners' Court of Jefferson County, Texas, agreed to pay to the relators the sum of Twenty Thousand and No/100 ($20,000) Dollars for their services.

5. Thereafter, relators voluntarily reduced the amount of their fee from the said Twenty Thousand ($20,000) Dollars to Sixteen Thousand Five Hundred ($16,-500.) Dollars, same being the basic minimum fee provided for and set up by the Texas Society of Professional Engineers for the work done, and thereupon the parties mutually agreed to said reduction.

6. That the basic minimum fee provided therefor and set up by the Texas Society of Professional Engineers for complete engineering service, is and was five per cent (5%) of the cost of the construction, and that further, there is allowed under such schedule for preliminary estimates and preliminary reports, a fee of five per cent of said total fee.

7. That in said contract and agreement made by relators with the Commissioners' Court of Jefferson County, Texas, it was specifically agreed that the services hereinabove were to be performed by relators and that they were to be paid for such services the sum of Twenty Thousand ($20,-000) Dollars, but thereafter the parties mutually agreed that relators would be paid for said services the basic minimum fee as set up and allowed by the Texas Society of Professional Engineers without regard to the success or failure of any bond issue in general and of the success or failure of the proposed Six Million, Six Hundred Thousand Dollars Bond Issue in particular, it being the agreement between the parties that the services were to be performed by the relators and the result of their work was to be furnished to the Commissioners' Court for its use in connection with such bond issue or with any other program of road improvement it desired carried out in the future.

8. That after making said contract and agreement of June 17, 1946, and the subsequent amendment reducing the amount of the agreed fee with the Commissioners' Court of Jefferson County, Texas, the relators in good faith entered into the performance of said contract and at the cost of great labor, time and expense, prepared

and furnished to the Commissioners' Court of Jefferson County, Texas, three sets of preliminary plans, specifications, maps and estimates of costs of said county-wide improvement program.

9. That on or about July 8, 1946, prior to the completion by relators of said preliminary plans, specifications, maps and estimates of costs, the Commissioners' Court of Jefferson County, Texas, advanced to them the sum of Three Thousand ($3,-000) Dollars which was paid out of the current Road and Bridge Funds of each precinct, that is to say, Precincts One, Two, Three and Four, out of their current Road and Bridge funds, each paid to relators the sum of Seven Hundred Fifty ($750) Dollars.

10. That thereafter, on or about October 21, 1946, the Commissioners' Court of Jefferson County, Texas, by an order unanimously adopted in open court and spread upon the Minutes of the Commissioners' Court of Jefferson County, Texas, confirmed, ratified and in all things approved the oral agreement which said Commissioners' Court had entered into with the relators on or about June 17, 1946, and said Commissioners' Court thereupon ordered that the relators be paid the sum of Sixteen Thousand Five Hundred ($16,500) Dollars, same being the minimum fee set up by the Texas Society of Professional Engineers for the work which they, the said relators, had done in connection with said road program, less the Three Thousand Dollars which the Commissioners' Court of Jefferson County had previously advanced to relators, making the total sum ordered to be paid to relators by said Order of October 21, 1946, Thirteen Thousand Five Hundred ($13,500) Dollars, said sum to be equally prorated between the four Commissioners' precincts.

11. That on October 21, 1946, the Commissioners' Court of Jefferson County ordered received the said preliminary plans, specifications, estimates of costs and other data upon the proposed Six Million Six Hundred Thousand Dollars county-wide road improvement program prepared by the relators, and the said County has since received such plans, specifications and estimates of cost, and continously used the data therein in connection with the planning of a county-wide road improvement program, and at the same time of the trial of this cause such data was being used not only by the County, but by various groups of citizens in the preparation and planning of other additional bond issues in Jefferson County looking to the completion of a county-wide road improvement program.

12. That the relators have in good faith fully completed the details of their agreement with the Commissioners' Court and have furnished to said Commissioners' Court and each County Commissioner, as well as the County Clerk of Jefferson County, Texas a full and complete copy of all of said preliminary plans, specifications, maps and estimates of costs of the said Jefferson County road improvement program, and that such data furnished to the said Jefferson County, its Commissioners and its Clerk is now and has been at all times material hereto in the possession of the said County and is now and has been at all times material hereto utilized and made use of by the said County in connection with road planning, and that said County has since the completion of said work by relators received all of the benefits of said work and will in the future receive all of the benefits of said work.

13. That by an Order properly passed and adopted on the 9th day of December, 1946, the Commissioners' Court of Jefferson County did validly amend the budgets of each of the Road and Bridge Funds of each of the Commissioners' precincts to provide for the payment to relators of the sums legally due and owing to the relators, and that at all times material hereto there were sufficient current funds available and to become available to the respective Road and Bridge Funds of Jefferson County, Texas, to pay the obligations due to relators.

14. That the Commissioners' Court of Jefferson County, recognizing its obligation under the contract and agreement with the relators, ordered and directed the County Clerk of Jefferson County, Texas, Fred G. Hill, to prepare and sign four warrants drawn upon the respondent as

County Treasurer of Jefferson County, Texas, in the total sum of Thirteen Thousand Five Hundred ($13,500) Dollars in payment of the contractual obligation of the said Commissioners' Court to the relators, each of said warrants being in the sum of Three Thousand Three Hundred Seventy-five ($3,375) Dollars and drawn upon the Road and Bridge Funds of each of the four precincts of said County. That said County Clerk, Fred G. Hill, did thereafter, prepare and sign such warrants and same were likewise countersigned and approved by the County Auditor, E. S. Foreman, and that said warrants were then delivered to the respondent in his capacity as Treasurer of Jefferson County, Texas, for his signature, on or about the 29th day of October, 1946, and that said defendant still has and retains possession of said warrants and has wilfully, arbitrarily and capriciously without legal justification, failed and refused to sign said warrants as his duty under the Constitution and Statues of the State of Texas plainly required him to do so and although demand has been upon him to sign such warrants, he has wilfully failed and refused to do so.

15. That the respondent, Dwight Morrison, has failed to perform the purely ministerial act of signing said warrants, in the performance of which he has no legal discretion whatsoever.

16. That the amount of money sued for herein by the relators and agreed to be paid them by the Commissioners' Court of Jefferson County, Texas, is in all things fair, just and reasonable, and is not an excessive fee in any particular.

17. That Jefferson County, Texas, has since the completion of the plans, etc., by the relators accepted and retained the benefits of said agreement and the work product of the relators, and the amount it has agreed to pay to the relators for their professional services is in all things just, fair and reasonable.

### Conclusions of Law.

1. Each and all of the Orders of the Commissioners' Court of Jefferson County, Texas, relating to its agreement and transactions with the relators are in all things valid.

2. The relators are entitled, as a matter of law, to the Writ of Mandamus.

3. The respondent, intervenors, and plaintiffs in this consolidated cause are not entitled to the Writ of permanent injunction sought by them herein against the relators, nor to any other relief.

Thereafter, at the request of the appellants, the trial judge made and filed some 30 pages of additional findings of fact and conclusions of law wherein he refused to make certain findings requested by appellants. Such findings and conclusions are altogether too voluminous to set out in this opinion. To a great extent they are detailed findings which are included in the general findings found in the original findings of fact. However, it might become necessary to refer to certain of such findings in the progress of this opinion.

Appellants have predicated this appeal upon 129 points of error. Some 100 of such points attack in various ways the agreement between the County Judge and the four Commissioners of Jefferson County and the relators of date June 17, 1946 referred to in findings of fact Nos. 3, 4 and 7 above set out; the order of the Commissioners' Court of Jefferson County of date October 21, 1946 referred to in findings of fact No. 10 and the order of the said Commissioners' Court of December 9, 1946, referred to in findings of fact No. 13. The order of date October 21, 1946, is as follows:

" * * * upon motion of Commissioner Black, seconded by Commissioner Welch, the following order was unanimously adopted: "That the Commissioners' Court hereby confirms and ratifies, and in all things approves the agreement heretofore entered into between the Commissioners' Court and the firm of Kohler & Shipley, Engineers, and that the Commissioners' Court pay the said firm of Kohler & Shipley the sum of $16,500.00, which is the minimum fee set forth by the Texas Society of Professional Engineers for such work, less $3,000.00 previously advanced, making the sum now due Kohler & Shipley $13,500.00, to be equally prorated between the four Commissioners' precincts. Copy of maps, plans and specifications to be furnished each

Commissioner's precinct and one copy to the County Clerk to be filed, and the firm of Kohler & Shipley be released by the Commissioners' Court of Jefferson County."

The order of December 9, 1946, is as follows:

"Be it remembered that on this the 9th day of December, A.D., 1946, there was begun and holden a Regular Session of the Commissioners' Court of Jefferson County, with the following members and officers present and participating: Hon. W. W. Pat Kent, County Judge, R. C. Black, Commissioner Precinct No. 1, H. O. Mills, Commissioner Precinct No. 2, L. Welch, Commissioner Precinct No. 3, F. J. Helmke, Commissioner Precinct No. 4, W. W. Richardson, Sheriff, and Fred G. Hill, Clerk, when the following proceedings were had and orders made, towit:

\* \* \* \* \* \*

"Upon motion of Commissioner Helmke, seconded by Commissioner Welch, the following order was unanimously adopted:

"Whereas, the Commissioners Court of Jefferson County, Texas, has been petitioned by a large number of representative tax paying citizens to call a bond election in said County at which the proposition of issuing the bonds of said County in the sum of Six Million, Six Hundred Thousand ($6,600,000.00) Dollars will be submitted to said voters; and,

"Whereas, the duty of laying out and constructing public roads and bridges in said County is placed upon said Court by the Constitution and Statutes of the State of Texas; and,

"Whereas, it is imperative that preliminary plans, specifications, maps and estimates of the cost of said road program be prepared for use in connection therewith and in connection with any future program in said precincts; and,

"Whereas, the work of preparing said plans, specifications, maps and estimates of costs requires technical knowledge, skill, experience and business judgment of a high degree; and,

"Whereas, it is necessary not only in connection with said bond issue, but in the future construction of an integrated system of roads in said county; that said plans, specifications, maps and estimates be prepared for each Commissioner's precinct of said County; and,

"Whereas, C. A. Kohler and Ben F. Shipley, Registered Engineers, are familiar with the needs and requirements of each of said precincts and possess the requisite technical knowledge, skill, experience and business judgment to properly prepare said plans, specifications, maps and estimates of costs; and,

"Whereas, in accordance with the accepted Engineering practice and Section 8 of Division 'A' of Minimum Fee Schedule for Engineer Fees in Texas adopted by the Society of Professional Engineers, it is estimated that the costs of the services of said Engineers will be $16,500.00; and,

"Whereas, there is no provision in the budget of the respective road and bridge funds of the respective precincts of said County to care for the expense of the preparation of said plans, specifications, maps and estimates of costs for such program; but, this Court here and now finds as a a fact that sufficient funds are available, or will become available, during 1946 to each of said Road and Bridge Funds to defray such expenses; and,

"Whereas, the expense of retaining Engineers and the preparations of said plans and specifications, maps and estimates of costs could not, by reasonably diligent thought and attention, have been included in the budget for said Road and Bridge Funds and the imperative necessity of having such Engineering work done, creates a grave public necessity to meet unusual and unforeseen conditions requiring the amendment to the budget of each of said road and bridge funds to care for said expenses; and,

"Whereas, the Court here and now finds that there are sufficient funds available and to become available for each of such road and bridge funds to care for the Engineeering costs in the respects aforesaid; now, therefore,

"Be it ordered by the Commissioners Court of Jefferson County, Texas:

"1. That the said C. A. Kohler and Ben F. Shipley, each possessing the requisite

technical knowledge, skill, experience, and business ability, be, and the said partnership of Kohler & Shipley, is hereby retained to prepare all necessary preliminary plans, specifications, maps and estimates of costs (proportioned as to Commissioners Precincts) for use in connection with said road program.

"2. For and in consideration of the premises, and the services to be rendered by said Engineers, the sum of Sixteen Thousand, Five Hundred and no/100 ($16,500.-00) Dollars (apportioned equally among each Commissioners Precinct of said County), shall be paid to said Engineers.

"3. The budget for the year 1946 for each of the Road and Bridge Funds (Precincts Nos. 1, 2, 3 and 4 of said County) be, and the same are hereby each amended to make available from otherwise unappropriated funds of said County, the sum of Four Thousand, One Hundred Twenty-five and no/100 ($4,125.00) Dollars to each of said funds.

"4. The Court having heretofore made such determination and said services having heretofore been rendered but through error and inadvertance, the budget of said County was not amended, it is further ordered that this order be entered nunc pro tunc in lieu of and in correction of the orders heretofore entered.

"Passed and approved this the 9th day of December, A.D. 1946."

██ As to the order of the Commissioners Court of December 9, 1946, amending the budget of the several Commissioners' road precincts of the County, appellants contend that there was no budget amendment attempted prior to December 9, 1946; that no funds were originally budgeted for the payment of the warrants in issue; that no funds are now properly budgeted for such purpose and that there existed no unappropriated funds available for the payment of the warrants in issue or to justify the amendment of the budget for such purpose, and further that on December 9, 1946, the date of the order amending the budget, no emergency authorizing an amendment of the budget existed. In the trial court's supplemental findings the trial court found that neither on June 17, 1946, nor on October 21, 1946, was there any item in the road and bridge budget in the said Commissioners' precincts allocated for the payment of engineering fees in question; and that there was no finding made by the Commissioners Court on June 17, 1946, or on October 21, 1946, that an emergency existed requiring a budget amendment, and that on December 9, 1946, said Commissioners Court made the finding of the emergency requiring amendment of the budget to pay the fees to appellees for services previously rendered and that the amendment was made to pay relators for such services; and that on such date there were unappropriated funds in the several Commissioners' precincts either available or to become available to pay each of said warrants, and that on each of the dates of June 17, October 21 and December 9, 1946, and on the date of the trial there were and are sufficient funds available or to become available to satisfy and pay the warrants in question. Appellants contend that all such findings are either without support in the evidence or are against the overwhelming preponderance of the evidence so as to be manifestly wrong. With this contention, we are unable to agree. The evidence is sufficient to support appellants' contention that on the dates in question there was not sufficient cash on hand credited to the several Commissioners' precincts with which to pay the several warrants here in question. However, it was shown by the County Auditor that on the several dates here in question, including December 9, 1946, that there was then and there available in the Road and Bridge Funds of Jefferson County current funds either available or to become available out of the items included in the Road and Bridge Funds sufficient to pay the warrants in question, and that at the close of the year there were budget balances in each of said precincts, except one which was exactly even, but as a whole there was a budget balance of $1,930.66 after having charged against said funds the warrants here in question. We think this evidence was sufficient to justify the trial court in finding that on the several dates there was sufficient unappropriated funds either available or to become available in each of the road

precincts to pay the questioned warrants. While it is true that cash on hand or immediately available has a direct bearing on the ability of the County to pay a bill out of the current revenues, it is never a controlling fact for the reason that the Commissioners' Court is authorized under the law to take into consideration all revenues it might reasonably expect to become available to defray the current expenses for the year; and since it was shown that there were uncollected ad valorem taxes payable due the Road and Bridge Funds of the several Commissioners' precincts on each of the dates in question, the Commissioners' Court was authorized as was the trial judge in the trial of this case in finding that there were sufficient funds available or to become available to fully discharge the obligation created by these warrants out of the current funds for the year. The adoption of the budget in the first place is predicated entirely upon anticipated revenue and in common practice · any amendment thereto would necessarily be governed, to a great extent at least, upon anticipated revenue for the year.

■ We cannot agree with appellants' contention that the Order of the Commissioners' Court of December 9, 1946, amending the budget for the several commissioner's road precincts is void for the reason that on such date no emergency then existed authorizing such amendment because the services of the engineers, for which the amendment was made to cover, had already been performed. We find nothing in the budget law requiring the budget be amended at the time or before an obligation not included in the budget could be legally assumed. We feel that it would be altogether too strict a construction to place upon the provisions of the budget laws governing counties to require that the budget should be amended at the time the obligation was incurred. On the contrary we believe that the Commissioners' Court in amending any budget to cover any item of expense not already covered in the original budget should be controlled by the facts and circumstances as existed at the time the obligation was incurred or assumed. Since the amendment of the budget in question was made to take care of and

provide for payment for services theretofore rendered, the question of whether an emergency authorizing the amendment of the budget existed, it was proper for the Commissioners' Court to be governed by the facts and circumstances existing on the date of the original employment, and when this is done we feel that a sufficient showing of an emergency authorizing the amendment of the budget in question was made. See Spears v. City of South Houston, 136 Tex. 218, 150 S.W.2d 74, and cases there cited.

■■ We agree with the appellants that the arrangement made between relators and the County Judge and Commissioners of Jefferson County on June 17, 1946, was an unenforcible contract. It appears from the record beyond· dispute that at the time the Commissioners and the County Judge entered into a verbal agreement with the relators to perform the engineering services here in question that the Commissioners' Court was not in session; that no motion of any character was made or seconded or voted upon, or that any formal action as a Commissioners' Court was taken in connection with that agreement. It seems to be the settled law that a contract or an agreement made by a county is valid and binding only if made under the authority of a resolution or order duly passed at a meeting of the Commissioners' Court, and that no rights can be acquired as against the County by agreement with the individuals composing the Commissioners' Court; Texas Juris. Vol. 11, page 633 and cases there cited.

■ Appellants make no contention that the Commissioners' Court was without authority to make the contract of employment here involved except as it may be affected by the budget law, and the current revenues of the County sufficient to pay for such services. The County Commissioners' Court unquestionably has jurisdiction and the power to employ engineers to perform necessary engineering services in connection with a proposed bond issue. See Lasater v. Lopez, 110 Tex. 179, 217 S. W. .p. 373. Conceding that such an agreement with the Commissioners and the County Judge to be invalid, we are of the opin-

ion that the Court was fully authorized to ratify and validate the contract and agreement previously attempted to be entered into with the appellees, and having done so by their Order of October 21, 1946, such contract became valid and binding. See Boydstun v. Rockwall County, 86 Tex. 234, 24 S.W. 272; Leon County v. Vann, 86 Tex. 707, 27 S.W. 258; Gussett v. Nueces County, Tex.Com.App., 235 S.W. 857, 859. In the last case cited it was stated by the court: "A contract made in the name of a commissioners' court by an unauthorized party may be ratified by a formal order; but such order is not necessary to such ratification. When the fact of the contract came to the knowledge of the commissioners' court, and they elected to hold the bonds or take any other benefit under them, or to carry out its provisions, they ratified it, and the county was estopped to deny its validity. Kneeland v. Gillman, 24 Wis. [39] 42; Peterson v. Mayor, [etc., of City of New York,] 17 N.Y. [449] 453; Town of [New] Athens v. Thomas, 82 Ill. 259; Tyler v. Trustees, [of Tualatin Acad. & Pac. Univ.,] 14 Or. 485, [13 P. 329]; Fister v. LaRue, 15 Barb. 323." Under this authority it might be said that the payment to relators on August 8, 1946, of the advances for services rendered under the verbal agreement also constituted a ratification thereof.

Appellants remaining points complain of certain findings made by the trial court and exclusion by the trial court of certain evidence offered by appellants. We are of the opinion that some of appellants' points complaining of the exclusion of certain testimony offered by the trial court present error, but as we view the record as a whole, such errors become harmless and it would serve no good purpose for us to extend this opinion in discussing such points.

The trial court's supplemental conclusion No. 33, which we find is supported by the evidence, is as follows:

"I conclude that the fee of $16,500.00 claimed by the relators and ordered paid by the Commissioners' Court is in all things valid, just and reasonable, and that in ordering it paid the Commissioners' Court did not abuse its discretion in any manner, nor did it exceed its jurisdiction, and I conclude that the Commissioners' court acted in the utmost good faith and was not guilty of legal or actual fraud in any particular. I conclude that the intervenors, et al., have wholly failed to support by competent evidence any of the allegations in their various complaints of alleged fraud, abuse of discretion, or the alleged excessiveness of the fee agreed to be paid the relators".

This conclusion in connection with other findings and conclusions made by the trial court, which have support in the evidence, fully supports the judgment entered by the trial court and the same is therefore affirmed.