## GUERRA v. McCLELLAN et al.
### No. 12396.

Court of Civil Appeals of Texas.
San Antonio.
May 21, 1952.

Rehearing Denied June 18, 1952.

Gerald Weatherly, Austin, for appellant.

A. J. Vale, Rio Grande City, Raymond, Algee, Alvarado, Kazen & Woods, Laredo, L. Hamilton Lowe, Austin, for appellee.

NORVELL, Justice.

The controlling question squarely presented by this case is whether or not tax monies collected during the months of October, November and December of 1951, as a result of a levy made following the hearing upon a county budget for the year 1952, constitute "current revenues" for the year 1951. This was the question presented by the parties in their pleadings and by their evidence and expressly passed upon by the trial court.

Upon the former appeal of this cause, we directed the district court to issue a temporary injunction restraining appellees from paying out sums of money not provided for by the 1951 budget of Starr County, adopted on September 11, 1950. Article 689a–11, Vernon's Ann.Civ.Stats. This order was made without prejudice to the right of appellees to urge the legality of an order of August 16, 1951, purporting to amend the budget as the basis of a motion to dissolve the temporary injunction or urge the same as a defense to appellant's suit upon a trial of the merits. We held also that the validity of the amending order of August 16, 1951, could not be determined as the same was not part of the record and had not been considered by the trial court. We refer to our former opinion for a more complete statement of the contro-

versy. See Guerra v. McClellan, Tex.Civ. App., 243 S.W.2d 715.

In the present appeal, the parties and their respective positions in this Court are the same. Upon remand, the trial judge followed the instructions of this Court and entered the temporary order as directed. Appellees then moved to dissolve the injunction. After a hearing, appellees' motion was granted, whereupon an appeal was taken to this Court. The validity of the August, 1951, budget amendment is now at issue.

■ By means of an unsworn motion it is asserted that this cause became moot when the year 1951 came to an end. However, it is not shown by affidavit or otherwise that all obligations provided for in the amended budget of August, 1951, but not included in the original budget of September, 1950, have been paid off and discharged. Consequently it is not shown that the case is moot.

As above indicated, the validity of the questioned budget amendment is dependent upon the commissioners' court's authority to consider anticipated tax collections to be made in the months of October, November and December of 1951, which were not based upon the tax levy made in accordance with the original budget of September, 1950, or levies made prior thereto.

It is apparent that in amending the budget, the commissioners' court took such anticipated collections into account. For example, in the questioned amendment, an attempt was made to substitute seven pages (14 to 20, inc.) for corresponding pages in the original budget, which relate to the general fund of the county. The estimate contained in the original budget for current ad valorem taxes available for general fund purposes is placed at $48,000, whereas the corresponding figure set forth in the amended budget is $119,250. The proposed levy for general fund purposes set forth in the original budget was 25 cents (out of a total levy of $1.25) on each $100 of assessed valuation. The total assessed valuation of the county was set at $22,000,000. No change in these estimates was at-

tempted or proposed by the August, 1951, amendment.

M. A. Guerra, a witness for appellant, testified with reference to an examination of the Starr County treasurer's book, that, "All I could find out in the General Fund, the income for January 1st to the end of October (1951) was—the net income—all that came in the General Revenue Fund from October 1st to October 31st was $4,892.10. That was all I could find in the books. That is, pardon me, in October they did put in $83,000 from ad valorem taxes collected in October."

It is thus indicated that as a result of discounts allowed by Senate Bill 402, Acts 1939, 46th Leg. p. 654, Article 7255b, Vernon's Ann.Civ.Stats., most of the county's tax revenues are collected during the months in which discounts are allowed, i. e., October, November and December.

The view of the trial court upon the point is disclosed by the recitations contained in the order appealed from. That part of the order sustaining one of appellees' special exceptions recited that the court was "of the opinion that the ad valorem tax money collected by Starr County, during the months of October, November and December of the year 1951 are current revenues of said county for the year 1951, and may be expended for the payment of current expenses of said county during the year 1951." Appellant suggests and the amended budget indicates no other theory supporting the increased estimate of "current revenues" upon which additional expenditures for 1951 are based.

■ We are unable to agree with the trial court's holding. Taxes collected during the months of October, November and December of 1951, as a result of levy made in 1951, presumedly following the preparation of a budget for the year 1952, are primarily allocated to the payment of expenses for the following calendar year, that is, 1952. When the commissioners' court of Starr County placed its estimated general fund revenues at $48,000 in the budget adopted on September 11, 1950, *for the year 1951,* it based said estimate upon the anticipated collections that would result

from taxes collected as a result of a tax levy made in pursuance of the budget estimates contained in the budget of September 11, 1950. On the other hand, it appears that the estimate of general fund receipts of $119,250, contained in the amended budget, was based upon an estimate of taxes which would be collected upon a levy of taxes made subsequently to that fixed in pursuance of the budget of September 11, 1950.

While no Supreme Court case directly passing upon the point has been called to our attention, it appears that the Attorney General has advised various public officials of this State that the tax collections here discussed, i. e., those collected during October, November and December of any particular year, are primarily allocable to the payment of operating expenses for the succeeding year. While the opinions of the Attorney General are not binding upon the courts, they are rendered in accordance with constitutional and statutory authority, Article 4, § 22, of the Constitution, Vernon's Ann.St., Article 4399, Vernon's Ann. Civ.Stats., and possess a highly persuasive value in the courts. 5 Tex.Jur. 378, Attorney General, § 7.

Our attention has been called to an opinion of Hon. Price Daniel, Attorney General of Texas, rendered on June 12, 1947, in response to an inquiry from the County Auditor of Gaines County. The question involved was the authority of the commissioners' court to issue certain scrip warrants. The County Auditor stated that, "The scrip warrants, if issued, can be redeemed in November, 1947, from money received in the October tax collections. A large portion of our valuations being from oil we have consistently collected approximately 90% of the taxes in October. Of course, this will use up a large portion of the money needed for the 1948 operations of the precinct."

The Attorney General concluded that, "Taxes collected in October, November and December, 1947, under the 1947 assessment, in a county operating under art. 689a–1 et seq., V.C.S., are to be used for 1948 operations *and are not current revenues for 1947."*

In reaching this conclusion, the Attorney General said:

"In the case of Austin Bros. v. Montague County, Tex.Civ.App., 291 S.W. 628, reversed on other points, Tex.Com.App., 10 S.W.2d 718, it was held that where a county had issued warrants for the payment of roads machinery and said warrants were not intended to be paid out of current revenues, the warrants are void."

The part of said opinion quoted by the Attorney General reads as follows:

"'Section 7, Art. 11, of our Constitution declares, so far as pertinent, that:

"'No debt for any purpose shall ever be incurred in any manner by any city or county unless provision is made, at the time of creating the same for levying and collecting a sufficient tax to pay the interest thereon and provide at least 2% as a sinking fund.'

"It seems clear, both by the terms of the warrants and from the testimony of the commissioners, that the sums specified in the warrants were not to be paid out of the current funds of the year of their issuance. This being true, we think there can be no question under the authorities, but that the obligation constituted 'a debt' within the meaning of the constitutional provision we have quoted.

"In the case of McNeill v. City of Waco, 89 Tex. 83, 33 S.W. 322, it was said on this subject by our Supreme Court:

"'An obligation binding the city to pay for a matter relating to its ordinary expenses, such payment being, in contemplation of the parties, not intended to be made out of the current funds of the year in which the expenditure is made, or any funds on hand lawfully applicable thereto, would be a debt, within the meaning of the Constitution.'

"In the case of City of Terrell v. Dessaint, 71 Tex. 770, 9 S.W. 593, our Supreme Court also said on the subject:

"'We freely concede that debts for the ordinary running expenses of a city, payable within a year out of the incoming revenues of the year, and with other indebtedness not clearly in excess of the yearly income for general purposes, can be created by a city. But we think that a debt for current expenses in order to be valid, without a compliance with the constitutional and statutory requirements to which we have referred, must run concurrently with the current resources for such purposes, and that such a debt cannot be created without such compliance, which matures at such a time as would make it a charge upon the future resources of the city.'"

The Attorney General's opinion then continues as follows:

"Under Article 689a–9–11, V.C.S., the budget which is prepared in July and adopted in August seems to be tied to the tax levy made in August for taxes which are to become due and payable on October 1st. This is made manifest by that part of Article 689a–11 reading as follows:

"'When the budget has been finally approved by the commissioners' court, the budget, as approved by the court shall be filed with the Clerk of the County Court and *taxes levied only in accordance therewith,* and no expenditure of the funds of the county shall thereafter be made except in strict compliance with the budget as adopted by the court.' (Emphasis added.)

"The budget referred to here is the budget for the following calendar year. The taxes levied in August on the basis of the August budget are taxes which in contemplation of Article 689a–1 et seq. are to be applied to the expenditures for the following calendar year. This practice of levying taxes in August for use in the following calendar year worked well in practice until the Legislature passed Article 7255b, V.C.S., allowing a discount on ad valorem taxes paid in advance. Prior to this law, most of

the taxes levied in August were paid in January of the following year, immediately before they became delinquent on February 1st., Article 7336, V.C.S. After enactment of Article 7255b, the bulk of the taxes levied in August are paid in October, November and December following, in order to take advantage of the discount. This, however, does not change the fact that taxes collected in October, November and December 1947 under the 1947 assessment are to be used for 1948 operations.

"In view of the foregoing authorities, scrip warrants cannot now be issued that will have to be redeemed out of taxes collected under 1947 assessments for such taxes are revenues for 1948 operations and not current revenues.

Under the facts submitted, there has already been expended all but $9,773.70 of the amount appropriated under the 1947 budget for Precinct No. 4, the precinct in question. It is, therefore, our opinion that scrip warrants up to $9,773.70 may be issued if they are within the reasonably anticipated current revenues for 1947. It is our further opinion that no scrip warrants may be issued that are intended to be paid out of revenues for 1948 or any future year."

■ We are in agreement with the Attorney General in the conclusion reached by him, as well as the reasons stated in support of such conclusions. Undoubtedly one of the purposes of the Uniform Budget Law was to effectively discourage and prevent deficit spending by counties, Articles 689a–9 to 12, inc., Vernon's Ann.Civ.Stats., in accordance with the public policy of the State established by Article 11, § 7, of the Constitution. It is obvious that if a county uses 1952 revenues to pay 1951 obligations, it has embarked upon a program of deficit spending which the "pay as you go" budget law was designed to prevent. While a commissioners' court, like the governing body of a city or town, has broad discretion in estimating "current revenues," Spears v. City of South Houston, 136 Tex. 218, 150 S.W.2d 74, it can not take into account and consider for budget amending purposes those anticipated revenues which the law says are not current revenues for the particular year involved. To hold otherwise would be to declare the budget law a dead letter upon our statute books.

■ In connection with the scope and extent of our holdings, we point out that this is not a case involving the priority of claimants in and to county funds for particular years, nor is it a case wherein a purported creditor is suing upon a claim. On the contrary, we have a taxpayer asserting that an amendment to the budget is illegal and that as a consequence payments of county monies cannot properly be made thereunder. Our holding is that in amending a county budget the county judge and the commissioners' court in estimating the revenues available for the year which the budget covers cannot properly consider funds which may result from tax collections primarily allocable to the next succeeding year, although such taxes may be collected during the months of October, November and December of the year covered by the budget sought to be amended.

For the reasons pointed out, appellant is entitled to a temporary injunction. Hatley v. Bexar County, Tex.Civ.App., 144 S.W.2d 695, rev. on other grounds, Bexar County v. Hatley, 136 Tex. 354, 150 S.W. 2d 980; Dancy v. Davidson, Tex.Civ.App., 183 S.W.2d 195, wr. ref.; Guerra v. McClellan, Tex.Civ.App., 243 S.W.2d 715. The order of the trial court is reversed and, during the pendency of this suit, the appellees and each of them are hereby enjoined from paying out any sums of money upon 1951 obligations of Starr County not provided for in the original budget for the year 1951, adopted on the 11th day of September, 1950. This injunction is dependent upon appellant's executing a bond in the sum of $5,000, conditioned as the law provides.

Reversed and rendered.

W. O. MURRAY, Chief Justice (dissenting).

I do not concur in the opinion of the majority. In this suit for a temporary injunction it is unimportant in the year 1952 whether obligations were created in 1951 in Starr County by the commissioners' court of the county in violation of the budget for that year, unless such obligations were created in violation of art. 11, § 7, of the Constitution of the State of Texas. There is nothing in the budget law, art. 689a–1 et seq., which provides that any obligation against a county which is not contained in its current budget is null and void and can never be paid, not even on a quantum meruit basis. Waller County v. Freelove, Tex.Civ.App., 210 S.W.2d 602.

The State Constitution, art. 11, § 7, reads in part as follows:

"* * * But no debt for any purpose shall ever be incurred in any manner by any city or county unless provision is made, at the time of creating the same, for levying and collecting a sufficient tax to pay the interest thereon and provide at least two per cent (2%) as a sinking fund; * * *."

A "debt" has been defined as comprehending any pecuniary obligation imposed by contract, except such as is at the date of the agreement, within the lawful and reasonable contemplation of the parties, to be satisfied out of the current revenue for the year, or out of some fund then within the immediate control of the commissioners' court. 11 Tex.Jur. p. 670, § 121.

"Debts for the ordinary running expenses of a county, payable within a year out of the incoming revenues of the year, and with other indebtedness not clearly in excess of the yearly income for general purposes, are not within the purview of the statute and may be lawfully created without the making of special provision for their payment." 11 Tex.Jur. 670, § 121; City of Corpus Christi v. Woessner, 58 Tex. 462; Foard County v. Sandifer, 105 Tex. 420, 151 S.W. 523; Austin Bros. v. Montague County, Tex.Civ. App., 291 S.W. 628; Boesen v. County of Potter, 173 S.W. 462; Ault v. Hill County, 102 Tex. 335, 116 S.W. 359; Cochran County v. West Audit Co., Tex.Civ.App., 10 S.W.2d 229; Morrison v. Kohler, Tex.Civ.App., 207 S.W.2d 951; Waller County v. Freelove, Tex.Civ.App., 210 S.W.2d 602.

There is another reason why the trial judge properly dissolved the temporary injunction. The record shows that the injunction herein sought is against the commissioners' court to prohibit them from paying out money for services rendered by various persons for Starr County at the request of the commissioners' court. In any event the county must pay to these individuals the reasonable value of such services, the benefit of which has been accepted by the county. Waller County v. Freelove, supra; City of Mission v. Eureka Fire Hose Co., Tex.Civ.App., 67 S.W.2d 455; Sluder v. City of San Antonio, Tex. Com.App., 2 S.W.2d 841; City of Houston v. Finn, 139 Tex. 111, 161 S.W.2d 776; Hayward v. City of Corpus Christi, Tex. Civ.App., 195 S.W.2d 995; 4 Tex.Jur. 726. Before appellant would be entitled to the temporary injunction which he seeks, he would have to go further and show that the commissioners' court of Starr County is threatening to pay these parties more than the reasonable value of the services, which they have rendered for the county. To grant the temporary injunction here prayed for would be for this Court to declare void certain supposed obligations of Starr County without knowing under what circumstances they were created, what value the county received for such services, or the amount of such supposed debts. As a matter of fact, we cannot tell from the record whether any such obligations exist. The holders of these obligations, if any, are not made parties to this suit and we are here asked to declare their claims against the county, if any, null and void without their having had their day in court.

The order of the trial judge dissolving the temporary injunction should be affirmed.